62 So.2d 641

STATE ex rel. MOUTON v. WILLIAMS et al.

No. 40794.

Dec. 15, 1952.

Rehearing Denied Jan. 12, 1953.

Mestayer & Mestayer, New Iberia, for relator and appellant.

L. O. Pecot, Franklin, for respondent and appellee.

HAWTHORNE, Justice.

This is a habeas corpus proceeding in which a mother, Mrs. Vivian Mouton Williams, seeks the custody of her 11-year-old daughter, Mary Ann Williams, now living and residing with a paternal uncle, T. C. Williams. After trial on the merits the lower court recalled the writ and dismissed the mother's suit, and she has appealed.

The mother, Mrs. Vivian Mouton Williams, was divorced from her husband, now deceased, in 1948, and in those proceedings was awarded the care and custody of their

child. Thereafter the mother was adjudged insane and in June, 1949, was committed to the Central Louisiana State Hospital at Pineville, where her mental illness was diagnosed as "manic-depressive psychosis, alternating type", and where she remained for a period of about 40 days. She was again committed to this institution in December, 1950, and released after a period of about 30 days. Upon her second commitment the father of the child, who had remarried, took the child to live with him in his home. The child remained with her father until his death on June 14, 1951, and then went to live with her father's brother, T. C. Williams, respondent in the instant case. The trial judge refused to order the child taken from the respondent because in his opinion, as shown by his reasons for judgment, the mother was not mentally fit to have the custody and care of the child, and the child might become a neurotic if returned to her mother.

Two doctors testified as to her mental condition. The psychiatrist who had examined and treated relator during the times she was a patient at the hospital also examined and talked with her at about the time of the trial. According to his testimony relator at that time was not suffering from any form of nervous or mental illness and in his opinion was presently sane and, so far as her mentality was concerned, was at that time capable of caring for the child. He testified, however, that, in the event she had another attack of manic-depressive psychosis, she could not care for the child and would probably have to be hospitalized again and treated, but that upon her recovery she could be sent home and could resume her normal activities. He further testified that individuals suffering from manic-depressive psychosis may have recurrent attacks, and that it is impossible to predict the frequency of the attacks; that some patients have them every few years and some go as long as 20 years without a recurrence.

On the other hand, the coroner who had signed the second order of commitment, who was also the family physician and in this capacity was acquainted with relator and the members of her family, testified that he was of the opinion that the relator was insane "on and off", and that he believed this condition would remain with her during her life. He testified positively that he did not think the relator could properly care for the 11-year-old child.

The testimony of other witnesses reveals that, at the time the child was taken to her father's home, she was nervous, in a run-down condition, and suffering from malnutrition. She had just previously had a severe attack of influenza and had undergone two operations, a tonsillectomy and an appendectomy. It is not shown from the record whether her condition was caused by neglect and lack of care or from these illnesses. It is shown that the child's health and general condition improved after she was taken from her mother. It is es-

tablished that respondent has a good home, is respected in the community in which he lives, and is a leader in youth work. He and his wife have one child, a son, a few years older than relator's child, and are in a position to provide every care for the little girl, who seems to be happy, contented, and loved by the respondent and his wife.

In a case of this nature concerning the future welfare and life of a child, the responsibility of decision rests exceedingly heavily upon this court, and we are in need of all the guidance we can secure so that we may judge the case wisely.

█ It is well settled in our jurisprudence that a mother has a right to the custody of her child as against third persons, but that this right must yield to the superior right of the State to deprive her of such custody and possession in the event she is morally, mentally, or otherwise unfit and the welfare of the child requires it.

█ We have given our most careful consideration to all the evidence in the record before us, and we find that the child is in good health, happy, contented, and well adjusted in her school and social life. These circumstances would not, however, justify our depriving the mother of her right to her child if the mother is not unfit and the child's future welfare can be served by placing her in the mother's care.

█ The medical evidence is uncontroverted that the mother has in the past suffered attacks of a mental illness of such nature that it may recur, but the record reveals little or nothing of her actions, symptoms, and mental state when these attacks occur. There is not sufficient evidence in the record to give us a clear and complete picture of the environment of the mother's home where the child once lived and where she will again live if placed in her mother's custody. We cannot, therefore, in the present condition of the record decide this serious and vital matter, and for this reason we have concluded to remand the case for the taking of additional evidence.

Evidence should be introduced to show whether the mother might have homicidal tendencies when these attacks occur or do some physical harm to the child, or whether the child might be grossly neglected or subjected to severe physical, mental, and emotional strain, and particularly in this connection whether the child's previous malnutrition was caused by the mother's neglect. Moreover, evidence should be adduced to show what arrangements can be made for the care of the child if the mother should have to be hospitalized again. Further, the evidence should show the living conditions in the mother's home, and the court should have the benefit of the testimony of her relatives who reside in or near this home, especially that of her sister who made the affidavits leading to her commitment.

For the reasons assigned, the judgment appealed from is annulled and set aside,

and the case is ordered remanded to the district court for further proceedings consistent with this opinion. Respondent-appellee is to pay the costs of this appeal; all other costs to await final decision.