313 So.2d 324 (1975)
Herman INGRAM and Betty Davis Ingram
v.
Patrice Diane Gatlln SARAGUSA.
No. 10250.
Court of Appeal of Louisiana, First Circuit.
May 19, 1975.
A. Clayton James, Jr., Franklinton, for appellants.
Haley M. Carter, Franklinton, for appellee.
Before LANDRY, BLANCHE and YELVERTON, JJ.
BLANCHE, Judge.
The defendant-appellant, Patrice Diane Gatlin Saragusa, appeals a judgment of the Twenty-second Judicial District Court granting unto the plaintiff-appellees, Herman Ingram and Betty Davis Ingram, the care, custody and control of the minor, Rebecca Joan Gatlin, reserving to defendant reasonable visitation privileges and allowing her custody of the child on alternate weekends from 10:00 o'clock a. m., Saturday mornings, to 5:00 o'clock p. m. on the Sunday following. We reverse.
Rebecca is a four year old child, and the defendant-appellant is her twenty-one year old mother. The plaintiff-appellees are the defendant's mother and her husband. The issues presented for resolution relate to the mother's ability, capacity, and fitness to care for the minor child.
Rebecca was born unto the unwed defendant on May 14, 1971, when the defendant was approximately eighteen years of age. Thereafter, the defendant and Rebecca lived in the home of the Ingrams, in Franklinton, Louisiana. Then in August, 1972, defendant married Joseph Saragusa, and she and Rebecca went with her husband to establish a marital home in Tangipahoa Parish. However, after only two weeks, defendant abandoned her husband and returned with Rebecca to the Ingrams. Several weeks thereafter, on the first of October, she returned with Rebecca to her husband, but then abandoned him again the last of December, 1972. Since that time, she and Rebecca have lived with the Ingrams.
On March 9, 1973, several months after defendant returned to the Ingram home, *325 the petitioners filed the instant suit seeking the permanent custody of Rebecca. As will be shown, the petitioners put at issue the ability of the defendant to properly care for her child. They alleged that the defendant is mentally unstable and that from time to time she becomes emotionally upset, and when this happens, she uses her child to threaten them. They also allege that on occasion they are unable to determine the whereabouts of the defendant. Furthermore, they fear that during an emotional episode she will harm the child. They alleged the child is sickly and that she should be under their custody in order for them to properly obtain medical care for her, especially in view of the fact the mother absents herself from time to time and her whereabouts are unknown. The petitioners cited their love for the child, their own good moral character, their financial stability, and the fact that the child is presently, and, has practically always been, cared for by them in their home. Pursuant to their petition, the Ingrams were granted temporary custody of Rebecca on March 8, 1973, pending a hearing on the matter. On May 10, 1974, the Ingrams were granted the permanent care and custody of Rebecca.
The general rule is that in a contest between a parent and a non-parent for custody of a child, the parent's right is superior, unless the parent is shown to be unable or unfit to care for the child, or has forfeited his parental rights, Fulco v. Fulco, 259 La. 1122, 254 So.2d 603 (1971); Wren v. Wren, 301 So.2d 748 (La.App. 2nd Cir. 1974). There has been no allegation that the parent in the instant case has abandoned or otherwise forfeited her parental rights. The arguments presented both in the trial court and on appeal relate specifically to the capability or fitness of the defendant to properly care for her minor child.
The trial judge, in granting custody to the maternal grandmother and her husband, did not specifically decide or pass upon the ability of the defendant to care for the child. He simply said in his reasons, "considering the testimony given, the court finds it to be in the best interest of the child that custody be granted to the maternal grandparents at the present time."
In Wood v. Beard, 290 So.2d 675 (La. Sp.Ct.1974), a finding by the trial judge that the "best interests" of the child required that he remain with the grandparents was considered insufficient to withdraw a child from the custody of his parents. The Louisiana Supreme Court specifically held that such a finding did not conform to the requirements of Fulco, supra, in that it did not hold the parent to be unfit or unable to care for the child. In view of the fact that the trial judge did not decide whether or not the mother was unable or unfit in the instant case, we must now consider the question de novo on appeal.
The record discloses that the defendant was treated for mental illness at Mandeville, Louisiana, in 1969 and departed the hospital against doctors' orders. She was subsequently treated for her condition as an out-patient in a Bogalusa clinic.
Presently, she works at the J. H. Rutter-Rex Manufacturing Plant, Franklinton, Louisiana, from 7:00 o'clock a. m. to 4:30 p. m. and occasionally a half day on Saturday. The exact amount of her pay is not in the record. Defendant is buying a house trailer in which she has never lived (for reasons unclear from the record), a car, and is paying a bank note for a prior hospitalization of Rebecca, which payments all total approximately $231.00 per month. Defendant retains only $10 to $20 from her paycheck and gives the remainder to her mother who pays the aforementioned debts for her. From said remainder, her mother is only able to pay the current interest on each note. Her mother obviously takes care of all her affairs, and defendant did not know the balance she owed on the aforementioned debts. Defendant testified her mother has always paid her bills and did not object thereto.
*326 The evidence established that defendant leaves the Ingram home almost every weekend and visits various relatives, including her aunt, Mrs. Angela Saragusa, and her brother, David Gatlin. Even prior to the court's temporary custody award to the Ingrams, Rebecca very seldom accompanied her, remaining instead with the Ingrams.
Defendant freely admitted her mother does all the washing and cooking for her and Rebecca.
In view of the fact that her estranged husband contributes nothing to the support of the defendant and her child, the Ingrams pay all Rebecca's bills.
The defendant's husband, Joseph Saragusa, contends he is attempting to reconcile with the defendant and does not know why she left him. He testified he would be willing to raise Rebecca, even though she was not his own child. The defendant, on the other hand, avers she has not left her mother's home to reconcile with her husband because she did not want to leave her child.
Mrs. Ingram, the defendant's mother, has testified the defendant has repeated attacks of rage, and that she goes off on weekends, with no one knowing her whereabouts. During those weekends, Rebecca remains with her. She stated she pays for Rebecca's correctional shoes, medicine, transports her to and from the doctor, and pays him. In effect, she contended she supports the child, including buying her clothes and food. Neither the defendant nor any other witness maintained that Mrs. Ingram was incapable of caring for the child.
Mr. Ingram corroborated that he and his wife pay all the child's bills. He was of the opinion that the defendant could care for her baby if she did not become upset, but that sometimes she goes into a rage and cannot control herself, and he feared for the safety of the child.
The defendant's brother, David Gatlin, and his wife, testified they never saw the defendant mistreat her daughter. Helen Savage, a co-worker of the defendant, said the defendant always expressed love for her child and always appeared to be mentally alert on her job. She felt the defendant was capable of caring for the child, but had only seen the defendant and her child together on four occasions. Mrs. Angela Saragusa, the defendant's aunt, also felt the defendant could care for her child. Mrs. Ruby Goss, the grandmother of the defendant, stated that she had never seen her granddaughter mistreat Rebecca.
Although from the foregoing facts we find ample evidence to support the trial judge's conclusion that the best interests of this child would be served by placing her in the care and custody of the Ingrams, those same facts would not support a finding by this court that the mother herein is either unfit or unable to care for her minor child.
In view of the fact that this court is unable to conclude from the evidence in the record that the instant mother is unfit or unstable, the Wood case, supra, requires us to reverse the judgment of the trial court.
For the foregoing reasons, the judgment of the trial court granting to Herman Ingram and Betty Davis Ingram the care, custody and control of the minor, Rebecca Joan Gatlin, reserving, however, unto the defendant, Patrice Diane Gatlin Saragusa, reasonable visitation privileges with the said minor child, is hereby reversed. The care, custody and control of the minor, Rebecca Joan Gatlin, is hereby restored to the mother, Patrice Diane Gatlin Saragusa. The costs of these proceedings to be paid by the plaintiffs, Herman Ingram and Betty Davis Ingram.
Reversed and rendered.