379 So.2d 37 (1979)
Donald DEVILLE, Plaintiff-Appellee-Appellant,
v.
Mr. and Mrs. Lloyd LaGRANGE, Defendants-Appellants-Appellees.
No. 7120.
Court of Appeal of Louisiana, Third Circuit.
December 19, 1979.
Rehearing Denied February 4, 1980.
Writ Granted March 21, 1980.
*38 Dubuisson, Brinkhaus & Dauzat, by Jerry J. Falgoust, Opelousas, for plaintiff-appellant-appellee.
Poteet & Landry, Walter J. Landry, Lafayette, for defendants-appellees-appellants.
Paul J. deMahy, St. Martinville, for defendant-appellee.
*39 Before CUTRER, STOKER and WARE,[*] JJ.
CUTRER, Judge.
Donald Ray Deville seeks by writ of habeas corpus to obtain custody of the minor, John Toby LaGrange, from Mr. and Mrs. Lloyd LaGrange. From the trial court judgment which decreed that Donald Ray Deville is the biological father of John Toby LaGrange, Mr. and Mrs. LaGrange appeal. Donald Ray Deville appeals from the judgment insofar as it awards custody of the child to Mr. and Mrs. LaGrange.
The issues presented on appeal are: (1) Whether the trial court erred in finding that Donald Ray Deville is the natural father of John Toby LaGrange, and (2) if Donald Ray Deville is the father, whether the trial court erred in awarding custody to Mr. and Mrs. LaGrange instead of Donald Ray Deville.

PATERNITY OF JOHN TOBY LaGRANGE
Donald Deville and Marie LaGrange began dating when they were in the tenth grade in high school. Donald lived in Opelousas and Marie lived in Arnaudville. After graduating from high school, their relationship continued and became sexually intimate. She went to college in Lafayette. After a short time, however, she terminated her schooling and moved back to Opelousas. A child was born to Marie on August 31, 1975, which she named John Toby LaGrange. Marie and Donald continued to see each other during this time, but never married.
After the birth of the child, and until her death on July 10, 1977, Marie and the child lived at several different places. She lived with Donald's parents in Opelousas, with her brother and sister-in-law, with her parents in Arnaudville, and with a Donald Smith in Opelousas. At the time of Marie's death, the child was living with the defendants, the maternal grandparents. Donald Ray contended that he was not allowed to see the child, thus, this suit was filed.
This suit was filed August 1, 1977 by Donald Ray Deville alleging his paternity of the child and praying for a writ of habeas corpus and for custody of the child. On August 3, 1977, Donald Ray Deville, by authentic act, acknowledged the child as being his. Mr. and Mrs. LaGrange answered the petition denying the paternity of Donald Ray Deville, asked for custody of the child, and asked that the writ of habeas corpus be discharged.
A lengthy hearing ensued resulting in a voluminous record. The testimony presented in behalf of the parties to the suit conflicts on almost every point.
The trial judge concluded that Donald Ray Deville by a preponderance of the evidence proved that he is the father of John Toby LaGrange.
In his ruling that Donald Ray was the father of the child, the trial judge gave the following in his reasons for judgment:
"... There is no way to reconcile the conflicting testimony of both sides of this case, and consequently this Court has [had] a most difficult time determining who is telling the truth and who is not, and finding what the facts are. This Court is able, however, to sufficiently sift through the evidence and conclude that it preponderates in favor of plaintiff being the father of the child, but against him being awarded custody.

"Lelia Marie LaGrange said from the beginning that plaintiff was the father of her child; plaintiff apparently has always admitted that he was the father, on numerous occasions and to many people. The mother and child, in any view of the evidence, spent a great amount of time at the home of plaintiff's parents. The photograph of the three of them (plaintiff's exhibit no. 7) is a family-type photograph; it is not reasonable to infer that the mother would have included plaintiff *40 in this photograph if he were not indeed the father, and likewise, he would not have wanted to be included in it if he were not. The blood tests, with the exception of Tommy Taylor who was not tested, exclude as possible fathers all those who defendants' evidence contends could be the father, while these tests do not exclude plaintiff; of course, it is academic that such tests are negative rather than positive in nature. The evidence clearly preponderates, then, in favor of plaintiff being the father of the child."

When, as in this case, the evidence is conflicting, the reviewing court should not disturb the reasonable evaluation by the trial judge of one set of witnesses as credible, and its rejection of the opposing set of witnesses. The reviewing court should not disturb reasonable factual inferences drawn by the trial judge from such testimony found by him, to be credible. Aleman v. Lionel F. Favret Co., Inc., 349 So.2d 262 (La.1977); Canter v. Koehring Company, 283 So.2d 716 (La.1973); and Boatner v. McCrory Corporation, 341 So.2d 1174 (La. App. 1st Cir. 1977), writs ref'd, 343 So.2d 1075 (La.1977), and 343 So.2d 1078 (La. 1977).
Mr. and Mrs. Lloyd LaGrange allege the trial court erred in not granting a new trial for the purpose of having Tommy Taylor submit to a blood test to determine whether he could have been the father. Mr. Taylor was not included in the blood tests given to four others including Donald Ray Deville. At the hearing, Taylor testified that he had sexual relations with Marie LaGrange during the period in which conception most likely occurred.
The trial judge denied the motion for a new trial. Mr. and Mrs. LaGrange argue that the trial court erred because he was required under LSA-R.S. 9:396 to order a blood test for Taylor.
LSA-R.S. 9:396 provides:
"Notwithstanding any other provision of law to the contrary, in any civil action in which paternity is a relevant fact, or in an action en desaveu, the court, upon its own initiative or upon request made by or on behalf of any person whose blood is involved may, or upon motion of any party to the action made at a time so as not to delay the proceedings unduly, shall order the mother, child and alleged father to submit to blood tests...." (Emphasis added)

The trial judge under LSA-R.S. 9:396 should deny the motion to compel a blood test if such motion would unduly delay the proceedings. We find that the trial judge was correct in denying the new trial because the request by the defendants for a blood test of Tommy Taylor was untimely since it came after the trial judge had rendered the judgment.
We shall affirm the trial court's conclusion that Donald Ray Deville is the father of John Toby LaGrange.

CUSTODY OF JOHN TOBY LaGRANGE
The trial judge awarded custody of the child to Mr. and Mrs. LaGrange, the maternal grandparents.
The trial court concluded as follows:
"... plaintiff is not fit to provide proper and necessary custody, and that he has forfeited his right to custody by neglect and abandonment, and by his mental unfitness to care for the child. It is considered that the best interest and welfare of the child dictates that custody remain with ... Mr. and Mrs. La-Grange."
The father, Donald Ray Deville, argues that the trial court cited the correct rules regarding custody of the child but misapplied them to the facts. It is his position that the defendants did not present any evidence of the unsuitability of Deville to have custody of the child.
The custody issue herein is a situation where a parent (natural father) is competing with non-parents (maternal grandparents). The law is well established in this area. In the recent case of Tolar v. Cunningham, 368 So.2d 1188 (La.App. 3rd Cir. 1979), this court, faced with a similar issue and citing the case of Wood v. Beard, 290 *41 So.2d 675 (La. 1974), set out the law in this regard.
"... Wood involved a habeas corpus action brought by the mother against the maternal grandparents seeking custody of her infant child. The Supreme Court granted the writ and ordered custody be given to the mother of the child. In so holding, the court reasoned that when parents compete with non-parents for custody of a child, `the parent's right to custody is superior, unless the parent is unable or unfit, having forfeited parental rights.' The court further held that the non-parent had the heavy burden of showing the disqualification and unfitness of the parent. Hence, it can be seen that, without lessening the effect and force of the `best interests of the child' test in a custody contest between a parent and non-parents, the Supreme Court recognizes a rebuttable presumption that the child's best interests are better served by awarding custody to the parent." 368 So.2d 1188, at 1190.

We are well aware of the rule that the trial court's determination in custody cases is entitled to great weight and will not be disturbed in the absence of manifest error. In the application of the law to the facts herein, however, we conclude that the defendants have not produced the evidence necessary to overcome the presumption afforded to the parent by law, thus, the trial court committed manifest error in making an award to the defendants.
In reaching its conclusion, the trial court placed special emphasis upon the fact that Donald Ray had failed to marry Marie, thereby causing the child to be born illegitimate. The court, along these same lines, pointed out that the relationship between Donald Ray and Marie began to decline after the birth of the child. The trial court further placed emphasis upon the fact that Donald Ray had moved to Baton Rouge, where he was employed, instead of remaining in Opelousas with the mother and child. The court further criticized Donald Ray for dating other girls while Marie and the child lived with his parents.
As to the relationship between Donald Ray and Marie, the law did not impose any obligation upon Donald Ray to marry Marie. Without such legal duty or obligation, the lack of such marriage cannot serve as a basis for concluding that Donald Ray has abandoned or neglected the child, nor that he is unfit to have custody of the child.
The trial court further indicates that Donald Ray's move to Baton Rouge where he was employed reflects a lack of interest in the child and, thus, the trial court considered this as evidence of abandonment.
In the fall, after finishing high school, Donald Ray found employment in Baton Rouge with Delta Southern where he worked for 3½ years and was still employed there at the time of trial. The record reflects that at the beginning of such employment he commuted each day between Opelousas and Baton Rouge. After commuting for a few months, he then went to live with his brother in Baton Rouge and later obtained an apartment there of his own. On weekends, he would return to Opelousas, visiting with his parents, Marie and his son. The trial court felt that Donald Ray's visitation with the child, however, was merely an incident to Donald's visit with his parents where Marie and the child were living at the time. The conclusion that Donald's visits each weekend were primarily to visit his parents, and not the child, is not supported by the evidence.
As late as April 1977, the record reflects that Donald Ray and Marie, by appointment with a priest, Rev. Ronald Braud, sought counsel as to the possibility of their marriage. Father Braud testified that Donald Ray wanted to know how to legitimate the child. Father Braud further testified that he had seen Donald Ray, Marie and the child at mass several times in Arnaudville and Opelousas.
The record also reflects that during 1977 Donald Ray's parents proposed to adopt the child. Donald Ray refused to consent to the adoption stating that he didn't want to give up his rights to the child. This evidence reflects a continuing interest in the child by *42 Donald Ray which, when considered along with the frequent visits with his son at his parents' home on weekends, convinces this court that Donald Ray had not abandoned the child.
As an example of the jurisprudence in this regard, in the case of Truelove v. Truelove, 350 So.2d 969 (La.App. 2nd Cir. 1977), the court found that the father had not abandoned his child because, though the child was living with the father's parents, the father visited the child at least every other weekend and on holidays.
The trial court also gave as a reason for refusing custody to Donald Ray, that Donald Ray did not provide significant support for the child. Donald Ray testified that he gave Marie some money from time to time but was uncertain as to the amounts and times. The record supports the trial court's conclusion that Donald Ray's support payments were not of a significant sum. The record reflects that Marie and the child were supported by welfare payments and the assistance and care of both the paternal and maternal grandparents. Donald Ray admitted that he collaborated with Marie (by helping her rent an apartment) in order that Marie and the child would qualify for welfare payments as support.
Donald Ray's lack of significant support and substituting in lieu thereof (by collaboration with Marie) the welfare payments for such support, was wrong and a serious error of judgment. We do not view it, however, as an intent to abandon the child. Denial of custody to Donald Ray cannot be used as a punishment for the past wrong committed by him against the Division of Family Services. The parent is not to be punished for his past behavior. Gautreaux v. Allen, 345 So.2d 103 (La.App. 1st Cir. 1977).
The trial court felt that Donald Ray did not make any serious effort to visit the child while it lived at the home of defendants. We agree that Donald Ray made no serious effort to visit the home of defendants. It is very doubtful that he would have received any cooperation from defendants as the record indicates that a strained relationship had developed between Donald Ray and defendants.
It has been suggested that Deville's request for the custody of his son is motivated by a desire to receive the social security income due John Toby, rather than a true love of the child. It has also been suggested that the paternal grandparents are the parties who are really seeking custody through their son. Those speculations, regarding the motives of the father, are not supported by the evidence. As stated in Tolar v. Cunningham, supra:
"... Moreover, we doubt that the legal precepts we must follow in this context can be overridden by such things as suspect (and only suspect) motives and interfamily feeling or spiteful action." Donald Ray testified that if he is awarded custody of the child, he planned to move back to the home of his parents in Opelousas and commute to and from his job in Baton Rouge. Donald Ray's employment is steady and he earns $15,000.00 per year which provides ample income for the support of the child. The trial court found that Donald Ray's parents' home was as suitable as the defendants' home to provide for the child. The record fully supports this finding. While it is true that Deville may be unable to provide a home for his child without the assistance of his parents, by their caring for the child while he works, this does not mean that he is unfit to provide a home for the child. Tolar v. Cunningham, supra; Neal v. White, 362 So.2d 1148 (La.App. 2nd Cir. 1978), writs den., 365 So.2d 243 (La.1978).
We conclude that the reasons set forth by the trial court do not justify the conclusion that Donald Ray is unfit to have custody of his son, nor do such reasons reflect that he has forfeited his rights to the custody of his son by neglect or abandonment. In the case of Henderson v. Spears, 292 So.2d 801 (La.App. 1st Cir. 1974), the court held as follows:
"... The jurisprudence of this state has always held that its abandonment statutes, like its adoption statutes, must be construed strictly, with a decree of abandonment being entered only *43 where `the evidence clearly shows manifestation of an intent to permanently avoid parental responsibility and all reasonable doubt should be resolved against entering such a decree.' In re State of Louisiana in Interest of Sharp, 219 So.2d 317 (La.App. 1st Cir. 1969)."

The defendants have failed, under the jurisprudence to carry their heavy burden of showing the unfitness of Donald Ray to have custody, or the abandonment or neglect of the child by Donald Ray, which would disqualify him from having custody of his son. The trial court's award of the custody of John Toby to the defendants must be reversed.
For these reasons, we affirm the trial court's judgment insofar as it decrees Donald Ray Deville to be the biological father of John Toby LaGrange. The judgment of the trial court is reversed insofar as it grants custody to Mr. and Mrs. Lloyd LaGrange, and it is ordered that the child, John Toby LaGrange, is to be placed in the custody of the plaintiff, Donald Ray Deville. All costs are to be borne by defendants, Mr. and Mrs. Lloyd LaGrange.
AFFIRMED IN PART; REVERSED IN PART; AND RENDERED.
NOTES
[*] District Judge G. Bradford Ware, Fifteenth Judicial District Court, participated in this decision as Judge Ad Hoc.