388 So.2d 696 (1980)
Donald DEVILLE
v.
Mr. and Mrs. Lloyd LaGRANGE.
No. 66997.
Supreme Court of Louisiana.
September 3, 1980.
Rehearing Denied October 6, 1980.
Walter J. Landry, Poteet & Landry, Lafayette, for defendant-applicant.
Jerry J. Falgoust, Dubuisson, Brinkhaus, Dubuisson & Falgoust, Opelousas, for plaintiffs-respondents.
*697 DIXON, Chief Justice.
This case involves an impassioned contest over the custody of a child whose mother, never married, died in an automobile accident when the little boy was two years old. The trial court determined that Donald Ray Deville, who had instituted these proceedings by applying for a writ of habeas corpus, was the natural father of the child, as he alleged, but that he was unfit to care for his son and had forfeited his parental right to custody. It therefore awarded custody to the child's maternal grandparents, Mr. and Mrs. Lloyd LaGrange, who had retained the boy in their household after their daughter's death. The Court of Appeal (379 So.2d 37) affirmed the determination of paternity but reversed on the issue of custody, awarding custody to the father. We granted writs to review those rulings.
Despite the conflicts and ambiguities which riddled the evidence presented on the issue of paternity, there was nevertheless a reasonable factual basis for the finding that Deville was the child's father, upon the trial judge's reasonable evaluation of credibility. The reviewing court was therefore correct in leaving this finding undisturbed. Aleman v. Lionel F. Favret Co., 349 So.2d 262 (La.1977). We concur in the conclusion that Deville is the father of the child.
The only real question presented for review by the trial court's resolution of the paternity issue was whether it was error to deny the LaGranges' motion for a new trial because no blood test was performed on a young man whose testimony indicated that he might have been the child's father. The results of blood tests performed on other individuals in September, 1977 had already been introduced and almost all of the other evidence was in, in these proceedings which had stretched on for almost two years, when this young man appeared as a witness for the LaGranges and raised the possibility of his paternity. Very soon after this testimony, Deville moved that this witness be ordered to submit to a blood test, and that order was signed on May 31, 1978. The minute entries show that service of the order was never accomplished and that on June 19, 1978 the record was left open so that counsel might decide whether to stipulate to the results of the test or to take additional evidence. On July 14, 1978 the judge formulated written reasons for judgment which took note of the omission of this particular blood test but which nevertheless found that evidence of Deville's paternity preponderated.
The LaGranges now argue that the case should be remanded for a new trial on the paternity question, to include the results of the blood test, because R.S. 9:396 imposes upon the judge a duty to order blood tests where paternity is an issue. But that statute provides that the judge shall order the tests "upon motion of any party to the action made at a time so as not to delay the proceedings unduly," and here the motion was made almost two years after the parties first appeared in court and only weeks before the case was finally submitted for judgment. Even at that late juncture the court did exercise its discretion to order the test, but notice of the order was never served. The young man whose blood test results are lacking was a witness for the LaGranges, so that they should have been aware, early on, of his identity and the gist of his future testimony. If they felt that the results of this test were vital to their proof that someone other than Deville was the father of the child, it was incumbent upon them, early in the proceedings, to file a motion for an order compelling the test. Instead, they took no action at any time to assure that any blood tests would be performed. They cannot now complain that the evidence on which the judge based the paternity determination may have been incomplete.
The Court of Appeal was also correct in finding that the LaGranges had failed to carry the very heavy burden of proof which is required before a parent will be deprived of the custody of his child. In Wood v. Beard, 290 So.2d 675, 676-677 (La. 1974), we enunciated as a rule of law the principle that "the parent has the paramount right to the custody of the child, and may be deprived of that custody only when *698 there are compelling reasons." We also indicated what forms these compelling reasons may take: proof that the parent has forfeited his or her right to parenthood, that he or she is unfit, or that he or she is unable to provide a home for the child. See also Comment, Louisiana Child Custody Disputes between Parents and Non-Parents, 25 Loyola L.Rev. 71 (1979). There is no reason to restrict the applicability of these principles to parent-child relationships which the law defines as legitimate. No one would argue that the weight of a mother's right to the custody of her child should be reduced simply because she is not married to the child's father and has not performed a formal act of legitimation. There may be a misguided tendency to view the situation in a different light when the parent whose right is at stake is the father, but this is so only because of a failure to distinguish between the right which flows from the fact of parenthood, whether that parenthood is legitimate or not, and the possibility of a subsequent forfeiture of parenthood through abandonment or neglect, which may be greater when the relationship between the child's father and its mother, or between the father and the child, has not been formalized. Parenthood itself confers a right to custody, but that right of parenthood may be forfeited by conduct which denies or rejects one's child.[1]
The trial court correctly noted the paramount nature of the father's right to custody and the strong showing which a non-parent must make in order to overcome the right, but it then proceeded to "balance the reasons for giving custody to plaintiff against those for not giving him custody." By so doing, it lost sight of the great weight to which the parental right to custody is entitled. The court eventually found that Deville was not entitled to custody because of neglect, abandonment and mental unfitness, but these conclusions were based on a voluminous amount of largely conflicting evidence which at most showed that Deville lacked a single-minded, permanent commitment to the child's mother, and that he permitted the child to receive most of its support from both sets of grandparents and state welfare services. While Deville certainly could have exhibited more concern and responsibility for his son while the child's mother was alive, his conduct did not constitute forfeiture or unfitness, as these terms have been construed by our jurisprudence.[2] The Court of Appeal was therefore correct in reversing this portion of the judgment and awarding the father custody of his child.
For the reasons assigned, the judgment of the Court of Appeal is affirmed.
DENNIS, J., dissents with reasons. [Editor's note: The dissenting opinion was not filed in time to permit publication with the opinion of the court; it will be separately published.]
LEMMON and MARCUS, JJ., dissent and assign reasons.
LEMMON, Justice, dissenting.
The natural father who has not made the effort to either legitimate or acknowledge his natural child should not be entitled to a "paramount right to custody".
*699 R.S. 9:404 terminates all parental rights when the mother voluntarily surrenders an illegitimate child who has never been formally acknowledged or legitimated by the natural father. By analogy the court-fashioned "paramount right" should be withheld from the natural father who had it entirely within his power to secure for himself the advantage he now wants to claim.
MARCUS, Justice (dissenting).
While concurring in the conclusion that Deville is the father of the child, I consider that the court of appeal erred in reversing the trial judge's finding that Deville was not entitled to custody because of his neglect, abandonment and mental unfitness. Accordingly, I respectfully dissent.
NOTES
[1] Defendants have directed our attention to Acts 1979, No. 536, § 1, which amended C.C. 256 to provide that if the child's natural father has not acknowledged the child before the death of the mother, the court shall give first consideration in appointing a tutor to the mother's parents or siblings, only secondarily considering appointment of the father. The amended statute may not be applied retroactively, since it is not merely procedural or remedial in nature.
[2] In Wood v. Beard, 290 So.2d 675 (La.1974), this court held that a mother was not unfit to have custody of her child merely because she had been convicted of an assault. In State ex rel. Mouton v. Williams, 222 La. 457, 62 So.2d 641 (1952), we remanded for further evidence on the issue of a mother's fitness, after it was shown that she suffered from episodes of manic-depressive psychosis which could recur. Forfeiture was found in State ex rel. Paul v. Peniston, 235 La. 579, 105 So.2d 228 (1958), where parents permitted their daughter to be cared for by the child's aunt and uncle for nine years, and in State ex rel. Deason v. McWilliams, 227 La. 957, 81 So.2d 8 (1955), in which parents attempted to conceal the birth of their child and surrendered the child to a couple located by an attorney.