399 So.2d 1308 (1981)
Richard Dale POWELL
v.
Barbara Ann BARSAVAGE, wife of Richard Dale Powell.
No. 12023.
Court of Appeal of Louisiana, Fourth Circuit.
June 2, 1981.
*1309 Craig J. Cimo, Gretna, for plaintiff-appellant.
George C. Ehmig, Gretna, for Mildred Barsavage, defendant-appellee.
Before GULOTTA, GARRISON and CHEHARDY, JJ.
CHEHARDY, Judge.
Plaintiff, Richard Dale Powell, appeals a district court decision denying the rule nisi brought by him seeking the change of custody of the child Bonnie Ann Powell from that of Mildred Barsavage, the maternal grandmother, to him the natural father of the said child and ordering the care, custody and control of the minor child to remain with Mildred Barsavage. The plaintiff also appeals that part of the judgment on a rule sought by Mildred Barsavage in her favor and against the plaintiff, making unpaid child support executory in the sum of $4,056 subject to a credit of $725, or a total of $3,331, together with legal interest thereon from the date that each payment of $26 became due and payable, until paid. Powell was also ordered to pay all costs of the proceedings.
The record reveals the plaintiff married Barbara Ann Barsavage on June 14, 1972, and of that marriage one child was born, Bonnie Ann Powell.
On September 29, 1976, a judgment of divorce was awarded to the plaintiff and that judgment also ordered him to pay child support for his minor child in the amount of $26 per seek. Additionally, the temporary *1310 care, custody and control of the child was awarded to Mildred Barsavage.
On April 14, 1980, Mr. Powell filed a rule seeking custody of Bonnie, and on June 9, 1980, Mrs. Barsavage filed a motion claiming the plaintiff was in arrears in the payments of child support in the sum of $4,056 and asking that the arrearage should be made executory.
In giving his reasons for judgment from the bench, the district court judge declared:
"* * * This Court is faced with the comparing of the best interest of the child and between that of the maternal grandmother and the father. Best interest may be in the opinion of this Court, what is the better interest of the child. Evidence basically presented to this Court today has been the rehabilitation of the husband. He felt that he was unable to keep the child and possibly being incapable, I guess at the time of May, 1975. And most of this testimony today relates to his rehabilitation in showing that he is a moral and in good character, and that he also goes to church, that he also holds a job, and that he has two previous children, that he is married and that he has the ability to keep the child. This Court has to make a determination not whether or not the father in this case has rehabilitated himself, but I keep going back to what is in the best interest of the child. And I think on the other hand that it has been shown to the Court that Mrs. Barsavage, the maternal grandmother, has not that she is unfit, in fact evidence has been brought out that she is very capable. It appears to the Court that she is well physically, even though she has had a heart attack in the immediate past. There has been testimony by all parties that she does keep a clean and normal house. That she makes a good home for the child, Bonnie, that there are other children in the neighborhood that she plays with, she does go to school, she maintains average grades in school. And this Court can't readily conclude that it is better that this custody be changed from the grandmother to the father. And the Court recognizes that generally the best interest of the child and the better interest is probably with the natural parent. And I think the husband in this case has made a strong showing that today he is capable to keeping the child, but I cannot conclude that this Court should change that custody that has been granted to the grandmother and that the burden, it is a strong burden, placed upon the father in which to do this. I think, not only that he is rehabilitated, but I think he's got to further show that the grandparent in this instance is unfit or incapable, as well as it is in the better interest of the child that he have that custody. This little girl has been in the home since age 2, and that is over five years now with the grandmother. And I don't know if this Court changed the custody whether it would be in the better interest, at least I'm not convinced that it is in the better interest. There is liberal, the Court finds that there is liberal visitation privileges given to the father. Whether or not liberal visitation privileges is tantamount to a split custody or custody to the father in this case. I think at least the father testifies that he can see the child whenever he wants, and appears the child lives close by. And I can't say that physically living in his household would be in the better interest of that child. Accordingly, this Court is going to keep the custody with the grandparent. One other fact I should point out. Although it doesn't weigh as heavily on the Court, the fact that the husband did not make payments since October, 1978. I think that is a factor that this Court has to consider in determining the best interest. But this Court is not giving as much weight to that. The Court does find that the defendant is delinquent in the amount of, I calculated that ... and I guess I don't know how you all can come up with $4,056.00, but I guess it turns out to be... You all figured it at $26.25 a week, is that it?"
The applicable jurisprudence to a case such as the present one is very clear. In the oft-quoted case of Wood v. Beard, *1311 290 So.2d 675 (La.1974), the Court declared at 677:
"When the parent competes with non-parents of the child, the parent's right to custody is superior, unless the parent is unable or unfit, having forfeited parental rights. State ex rel. Martin v. Garza, 217 La. 532, 46 So.2d 760 (1950); State ex rel. Simpson v. Salter, 211 La. 918, 31 So.2d 163 (1947); State ex rel. Martin v. Talbot, 161 La. 192, 108 So. 411 (1926); Ex parte Lincoln, 128 La. 278, 54 So. 818 (1911). See also State ex rel. Lombardo v. Miller, 232 La. 617, 94 So.2d 888 (1957). No such forfeiture has been found by either court below, and the evidence will not support such a finding. Nor will the evidence support a conclusion that custody in the parent will be inimical to the welfare of the child."
The holding of Wood, supra, has been reiterated in the recent case of Duffie v. Duffie, 387 So.2d 654 (La.App. 1st Cir. 1980), where the mother of a child sought a change of "physical possession" of the 9-year-old boy from the maternal aunt and uncle to herself who had been awarded "provisional" custody. In considering parental rights to custody vis-a-vis a nonparent's rights, the court said at 657-658:
"The primary consideration in every case between parents involving child custody is the best interest of the child. La.C.C. art. 157; Fulco v. Fulco, 259 La. 1122, 254 So.2d 603 (1971); Shanklin v. Shanklin, 376 So.2d 1036 (La.App. 1st Cir. 1979). The trial judge's written and oral reasons for judgment reflect a deep concern on his part to do what was right in this case. Based to a large extent on a private discussion with the youth, the trial judge determined that the child's best interest lay in keeping physical possession with the maternal aunt and uncle and provisional possession with the mother, and giving reasonable and liberal visitation rights to the mother. His holding, however, runs headon into the rule laid down by the Louisiana Supreme Court in Wood v. Beard, 290 So.2d 675 (La.1974).
"The court in Wood v. Beard, supra, held that the parent has the paramount right to the custody of the child and can only be deprived of custody under compelling circumstances. In so holding, the court said at 677:
`It is in the best interest of the child of tender years to grant custody to the mother unless the mother is unfit or otherwise unsuitable. Fulco v. Fulco, 259 La. 1122, 254 So.2d 603 (1971) and cases there cited. In the application of this rule it is not appropriate for the court to compare the mother's home with another when the mother and her home are acceptable, and then award the custody to the contestant who can provide greater advantages for the child. State ex rel. Rothrock v. Webber, 245 La. 901, 161 So.2d 759 (1964); State ex rel. Perdue v. Carkuff, 182 La. 920, 162 So. 729 (1935). The best interest of the minor is not served by denying parental custody after deciding which of two qualified, competing family groups can deliver a quality of child custody more pleasing to the court. A judicial comparison of qualified competitors for custody of a child does violence to the rule of "parental right." (See Blow v. Lottman, 75 S.D. 127, 131, 59 N.W.2d 825 (1953). "If the mother is a fit parent she cannot be denied custody of her children even though the grandmother is better qualified to rear them."). * * *'
The ruling of Wood v. Beard has been followed in Deville v. LaGrange, 379 So.2d 37 (La.App. 3rd Cir. 1979); Tolar v. Cunningham, 368 So.2d 1188 (La.App. 3rd Cir. 1979), writ denied 369 So.2d 710 (La. 1979); Ingram v. Saragusa, 313 So.2d 324 (La.App. 1st Cir. 1975); Mertens v. Mertens, 308 So.2d 508 (La.App. 3rd Cir. 1975), writ refused, 313 So.2d 240 (La. 1975).
"It could of course be argued that by awarding provisional custody to the mother and physical possession to the Ahrends, the trial court has followed the rule set forth in Wood. However, to allow such a custody order to stand would *1312 merely be circumventing the rule of Wood, and this we will not allow. It is clear that unless the parent is unable or unfit, the parent's right to custody of the child vis-a-vis nonparents is superior."
Furthermore, in the case of Joseph Lawrence Ingargiola v. Marilyn Clesi, wife of Joseph Lawrence Ingargiola, 396 So.2d 497, No. 12035 on the docket of this court, handed down March 10, 1981, this court recognized the holding of Wood v. Beard, supra, in a situation similar to the facts of the present case. The interpretation of the law in Duffie, supra, was also similarly followed in the case of La Croix v. Cook, 383 So.2d 59 (La.App. 2d Cir. 1980).
Moreover, there is no evidence in the record that the original decree granting custody of Bonnie to her grandmother temporarily was a "considered" decree (i. e., that there was evidence taken at the proceedings in regard to her fitness to have the care, custody and control of the child), a factor that was the responsibility of Mrs. Barsavage to introduce in order for her to invoke the "double burden" standard against the father at this change of custody hearing. Stevens v. Stevens, 340 So.2d 584 (La.App. 1st Cir. 1976).
There was no evidence produced at the district court hearing that Richard Powell is unfit to rear Bonnie or that he in any way forfeited his parental rights to have custody. He is married, working and also rearing two younger children, who, all testimony indicates, enjoy a good relationship with Bonnie. It was also established that Bonnie spends a great deal of time with the Powells and Mrs. Powell testified she treats Bonnie in the same manner she treats her own two children. There was also evidence and testimony that Mr. Powell has seen to Bonnie's medical needs over the years the grandmother has had custody of her. Under the circumstances, and in view of the law articulated in Wood v. Beard, supra, this court has no alternative but to reverse the trial court decision on this issue and award custody of Bonnie to her father.
We interpret the legislative scheme as reflected by the recent amendments to LSA-C.C. arts. 146 and 157 to mean that where the parental right (in a custody contest between a parent and a nonparent) interferes with the best interest of the child, the "best interest" concept is superior.
In the instant case, custody with either party will not do violence to the "best interest" concept. While we are reluctant to reverse the trial court's custody determination in any case, we are convinced from this record that the child's best interest will be served if custody is transferred to the father.
We can find no error, however, in the district court's award to Mrs. Barsavage, making executory past-due child support owed by Powell. The general rule is that the father's obligation to pay child support is only satisfied by making the payments, and the only way a father can relieve himself of the obligation of child support is by initiating a proceeding to have the judgment amended, suspended or terminated. Blankenship v. Blankenship, 382 So.2d 982 (La.App. 1st Cir. 1980).
Our jurisprudence also holds, however, that rights under a previously awarded alimony judgment may be waived, under certain circumstances, by agreement with the person responsible for the payments of support. Duplechan v. Duplechan, 270 So.2d 264 (La.App. 3d Cir. 1972). In the case of Dubroc v. Dubroc, 388 So.2d 377 (La.1980), the Court concluded there was an agreement between the parties to suspend part of the child support payments attributable to the maintenance of their son while he was being cared for in his father's home, and also found that the agreement was enforceable.
Similarly, our jurisprudence establishes that where a person having custody of a child voluntarily places the child in the custody of the father for an extended period of time, the father is entitled to credit for such period of time on any past-due child support. Henson v. Henson, 350 So.2d 979 (La.App. 2d Cir. 1977). However, it has also been held by the courts that a wife's *1313 mere acquiescence in the husband's failure to pay the full amount of support does not amount to a waiver. Dubroc v. Dubroc, supra.
In the present case, although there was testimony from Powell and his wife that Bonnie's grandmother asked them to suspend the support payments so she could obtain welfare assistance, this was emphatically denied by Mrs. Barsavage. It was, apparently, a finding of fact on the part of the district court judge that no such agreement of waiver of support payments existed between Powell and Mrs. Barsavage, and although Powell enjoyed liberal visiting privileges with the child, it was not established that he kept Bonnie in his custody for any extended periods of time, at her grandmother's request, which would allow him a credit on the unpaid past-due child support payments. This court can find no manifest error in these findings of fact by the district court judge, and, therefore, we will not disturb them on review.
Accordingly, this court affirms that part of the trial court judgment making past-due child support payments executory in the sum of $4,056 subject to a credit of $725, or a total of $3,331, together with legal interest thereon from the date each payment of $26 became due and payable, until paid. For the reasons stated, we reverse that part of the judgment dismissing the rule nisi brought by Powell and hereby order that the custody, care and control of Bonnie Ann Powell be changed from that of Mildred Barsavage to her natural father, Richard Dale Powell. That part of the judgment ordering the plaintiff to pay the costs of the proceedings is affirmed.
AFFIRMED IN PART; REVERSED IN PART AND RENDERED.