MARVIN, Judge.
In this child custody dispute, the mother appeals a judgment granting custody of her six-year-old son to the child’s maternal grandparents. We reverse and award custody to the mother.[1] Deville v. LaGrange, 388 So.2d 696 (La.1980); Burt v. McKee, 384 So.2d 489 (La.App.2d Cir. 1980).
The mother was 16 years old when she gave birth to her son in January 1976 and was never married to the father of the child. She voluntarily surrendered temporary custody of her son to her parents in juvenile court proceedings in June 1976. She led a rather checkered life between that time and December 1978 when she married Charles Smith. In April 1979 she gave birth to a second son, the first of two children of this marriage. The mother was eight months pregnant with the second child of this marriage when this case was tried in July 1981.
In July 1979 the mother petitioned for custody of her son and alternatively for visitation privileges after her father, allegedly on the advice of a juvenile officer, refused to allow the child to visit with his mother and her second son, away from her father’s home. In a consent decree, visitation privileges were awarded the mother, which she exercised regularly until she and her family moved from Monroe to Jennings where her husband found employment in January 1981. With less regularity, she continued to exercise visitation privileges after moving to Jennings. This action was provoked when the mother refused to return her son from Jennings to the grandparents in Monroe in July 1981 after a two-week visitation period.
The trial court observed:
“... [B]oth [the mother and the grandparents] dearly love the child ... [F]or several years [the mother] led a less than desirable life .. .[2] [The grandparents] have raised this child as their child [for] approximately 5V2 years. The court finds nothing unfit about [the mother] ... at the present time .. . [but her] actions over the past ... years are somewhat indicative of an abandonment, tacitly so ... The court questions [whether the son] .. . should be ... uprooted ... placed in a situation where he will be competing with another sibling for the attention of the mother ... if [he is] left [with the grandparents] ... [he] would get 100 percent attention.
*293 “[The mother] is well on her way to establishing herself as a reliable and responsible [mother] capable of handling and managing a large family[3] [but] to uproot ... [the son] ... and place him in a strange environment where he will be competing for attention would not be in the best interest of the child.”
In Deville, supra, the Supreme Court emphasized that:
“In Wood v. Beard [290 So.2d 675] ... we enunciated as a rule of law the principle that ... the parent has the paramount right to the custody of the child, and may be deprived of that custody only when there are compelling reasons. We also indicated what forms these compelling reasons may take: proof that the parent has forfeited his or her right to parenthood, that he or she is unfit, or that he or she is unable to provide a home for the child.” 388 So.2d at 698 (citations omitted)
There the trial court had awarded the custody of an illegitimate child to the maternal grandparents in a dispute with the natural father. The Supreme Court concluded:
“The trial court correctly noted the paramount nature of the father’s right to custody and the strong showing which a nonparent must make in order to overcome the right, but it then proceeded to ‘balance the reasons for giving custody to the [father] against those for not giving him custody.’ By so doing, [the trial court] lost sight of the great weight to which the parental right to custody is entitled.” ibid. Bracketed material supplied.
We must find here that the trial court in this action similarly erred in concluding that “... to uproot ... [the son] .. . would not be in [his] best interest”, where the court also finds “nothing unfit” about the mother when the custody issue is tried.
In Burt, supra, we observed that it is not proper to merely compare the parent’s situation with that of the grandparent and award custody on a best interest comparison because the parent enjoys the paramount right to custody over a non-parent. See and compare LaCroix v. Cook, 383 So.2d 59 (La.App.2d Cir. 1980); Powell v. Barsavage, 399 So.2d 1308 (La.App. 4th Cir. 1981); Juneau v. Bordelon, 380 So.2d 208 (La.App.3d Cir. 1980). Also compare Snell v. Snell, 347 So.2d 511 (La.App.2d Cir. 1977), and Cawthorne v. Williams, 313 So.2d 915 (La.App.2d Cir. 1975).
This record shows that the mother sought to establish a parental relationship with her son when he was about 3V2 years old and supports the trial judge’s conclusion that since that time she has been a “fit” mother and homemaker. The dissolute life led by the mother between the birth of her first son and her marriage in 1978 is not a compelling reason to overcome her paramount right to custody. Deville, supra. Lapointe v. Menard, 412 So.2d 223 (La.App.3d Cir. 1982).
At appellee’s cost, the judgment appealed is reversed and it is hereby ordered that defendants-appellees forthwith surrender custody of the minor, Nathan Wade Johnson, to his mother, Laura Elaine Johnson Smith, in whom permanent custody shall be maintained.
REVERSED AND RENDERED.
FRED W. JONES, Jr. and SEXTON, JJ., dissent for reasons assigned by SEXTON, J.

. The original consideration by a three-judge panel of this appeal produced the result contemplated by LSA-Const. Art. 5, § 8(B) and this appeal was submitted to a five-judge panel as the Constitution requires.

. Between July 1976 and April 1978, the mother was in and out of her parents’ home and accepted almost no responsibility for the care of her son. She continued seeing various men during this period and stayed with several of them without returning home to her child for days at a time. She had a miscarriage. She used marijuana regularly (although she denied the use of other drugs) and temporarily associated with members of a motorcycle gang. After the mother began living with Charles Smith in 1978 she ceased using marijuana and being promiscuous.

. Charles Smith has a 10-year-old daughter by a prior marriage who visits him and his family.