WARD, Judge.
The issue in this appeal is whether the Trial Court correctly awarded custody of a minor child, Harón Sullivan, to his father rather than to his maternal grandmother after the death of the mother. We affirm.
Harón Sullivan, the son of Yvette Cecelia Johnson and Horace Sullivan, was bom out of wedlock on August 15, 1976, in New Orleans, Louisiana. Horace Sullivan formally acknowledged Harón as his son by authentic act and recorded his name as the boy’s father on the birth certificate. At the time of Haron’s birth, Horace Sullivan was, and is today, married to Ella Sullivan. They live with their two children, Horace, Jr. now age 15, and Alisha, now age 11, in Ocean Springs, Mississippi.
After Haron’s birth, he and Yvette Johnson, his mother, lived in Mississippi, but when he was three years old, they moved back to New Orleans where her family resides. Since then Harón has lived in New Orleans but spent some or all of his summers with the Sullivan family in Ocean Springs.
Haron’s mother, Yvette Johnson, never married, but gave birth to Harón, the son of Horace Sullivan, and twin sons, Milton and Maurice Johnson, also born out of wedlock, the issue of a union with someone other than Horace Sullivan. Yvette Johnson suffered from chronic paranoid schizophrenia and during the last two years of her life she lived with her three illegitimate children in her mother’s residence. Yvette Johnson took her own life on March 26, 1987. She left a suicide note in which she asked her mother, “Please don’t let Harón go near Horace because he is evil.” Horace Sullivan attended Yvette Johnson’s funeral in New Orleans and when he returned to Ocean Springs, he took Harón with him.
Mrs. Johnson, Haron’s maternal grandmother, filed a petition in Civil District Court for the Parish of Orleans, alleging that it was in Haron’s best interest that she be awarded custody of him. The Trial Court ordered the Department of Health and Human Resources, and the Office of Human Development to conduct a home study of both Mrs. Johnson and Mr. Sullivan. The Trial Court further ordered psy *1171 chological studies of the family members by the Children’s Bureau of New Orleans.
The Trial Court conducted a hearing and heard the testimony of Horace Sullivan, Brenetta Johnson, Sharron Neyland (Mrs. Johnson’s daughter), and Sheila Seals, a social worker who has counseled Harón. The court made part of the record various documents, including the court-ordered reports, the marriage licenses of Mr. and Mrs. Sullivan and the divorce judgment terminating his first marriage, Haron’s birth certificate, the acknowledgement of paternity, Yvette Johnson’s suicide note, and court records that proved Horace Sullivan was convicted of aggravated battery of Yvette Johnson.
All of the court appointed experts recommended that Harón remain in his father’s custody.
Ms. Sheila Seals, a social worker with Family Services of Greater New Orleans, an expert in the field of counseling, testified for Mrs. Johnson. She recommended that the Court award custody to Mrs. Johnson, Haron’s grandmother, because Harón has actually been under his grandmother’s supervision for most of his life.
After hearing all the testimony, the Trial Judge spoke with Harón in chambers. Before awarding custody to the father, the Court explained that the law recognizes certain natural inherent rights and privileges of biological parents and thus requires clear and convincing proof that a parent is unfit or has forfeited his paramount parental right to custody. The Court relied on La.Civ.Code art. 146(B): “Before the Court makes an order awarding custody to a person other than a parent, it shall make a finding that an award of custody to a parent would be detrimental to the child and that the award of custody to the non-parent is required to serve the best interest of the child.”
The court found that Mrs. Johnson did not carry her burden to prove clearly and convincingly that awarding custody to the father would be detrimental to Harón, and the Court awarded permanent custody of Harón to Horace Sullivan and granted visitation to Mrs. Johnson. The court also ordered Mr. Sullivan to enroll Harón in counseling in Ocean Springs and set a status hearing in three months to review Har-on’s progress.
The United States Supreme Court has held that natural parents have a fundamental liberty interest in the care, custody, and control of their children. Santosky v. Kramer, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). Our Supreme Court has held in a custody contest between parents and non-parents, the parents enjoy a paramount right to custody and they may be deprived of that right only for compelling reasons. Wood v. Beard, 290 So.2d 675 (La.1974). These compelling reasons must be expressly determined by the Trial Court and must be supported by convincing proof. State in Interest of Jones v. Jones, 430 So.2d 169 (La.App.2d Cir.1983). A parent of an illegitimate child enjoys the same paramount parental rights as the parent of a legitimate child. Deville v. LaGrange, 388 So.2d 696 (La.1980). Additionally, the Trial Judge is vested with a vast amount of discretion in making a determination of child custody, and his decision will not be overturned in the absence of a clear showing of abuse of that discretion. Parker v. Payton, 511 So.2d 868 (La.App. 4th Cir.1987); Lions v. Lions, 488 So.2d 445 (La.App. 3d Cir.1986).
The parties and the Trial Court evidently presumed that La.C.C. art. 146(B) is now controlling:
Before the court makes any order awarding custody to a person or persons other than a parent without the consent of the parents, it shall make a finding that an award of custody to a parent would be detrimental to the child and the award to a nonparent is required to serve the best interest of the child. Allegations that parental custody would be detrimental to the child, other than a statement of the ultimate fact, shall not appear in the pleadings.
Article 146 is the first article of Book I, Chapter 3, of the Civil Code, entitled “Of the Provisional Proceedings to Which a Suit for Separation or Divorce May Give Occasion.” Article 146 is entitled “Custody *1172 of children pending the litigation,” and is, on its face, applicable only to temporary custody of children of the marriage pending final disposition of the parents’ separation or divorce suit. Thus, by its terms, Article 146(B) would seemingly not apply in this suit for permanent custody by a non-parent.
Appellate courts however, have held Article 146(B) applicable in resolving custody disputes between a parent and a non-parent even when the dispute does not arise from divorce or separation proceedings. See, e.g., Pounders v. Rouse, 528 So.2d 672 (La.App. 2d Cir.1988); McManus v. McManus, 528 So.2d 696 (La.App. 2d Cir.1988); Diggs v. Tyler, 525 So.2d 1263 (La.App. 1st Cir.1988); In re Bourg, 501 So.2d 862 (La.App. 5th Cir.1987); Hughes v. McKenzie, 539 So.2d 965 (La.App. 2d Cir. 1989); Johnson on Behalf of Johnson v. Earls, 464 So.2d 463 (La.App. 1st Cir.1985); Carroll v. Carroll, 476 So.2d 976 (La.App. 1st Cir.1985); Boyett v. Boyett, 448 So.2d 819 (La.App. 2d Cir.1984). This court has held, however, that Article 146(B) did not control in a child custody dispute between a biological mother and non-parents who had actual custody by virtue of an invalid notarial act of surrender for adoption. This Court only looked to Article 146(B) for guidance in deciding that dispute. In re Custody of Reed, 497 So.2d 1084 (La.App. 4th Cir.), writ denied, 498 So.2d 743 (La. 1986). In a remarkably similar case, although the Second Circuit Court of Appeal did not hold Art. 146(B) applicable, the Court looked for guidance to Article 146(B) where a non-parent sought to deprive a biological parent of the custody of his illegitimate child after the death of the mother. Walker v. Washington, 540 So.2d 1002 (La.App. 2d Cir.1989).
There simply is no provision of the Civil Code that is directly applicable to the present custody dispute, where the natural mother is deceased, and where the maternal grandmother, a non-parent, and the natural father who has acknowledged the child but has never had custody, each seek permanent custody. Nor is there any authority in the Civil Code to award permanent custody to a nonparent. Nevertheless our Supreme Court has consistently held Trial Courts have both jurisdiction and authority to award permanent custody to a non-parent. Deville v. LaGrange, supra, Wood v. Beard, supra.
Mrs. Johnson, recognizing the superior position of a parent, raises this issue: As used in La. C.C. Art. 146(B), is a “Parent” simply a biological father or mother, or is a “Parent” one who has on a continuing basis provided food, clothing, shelter, emotional and psychological support to a child?
Mrs. Johnson argues that, while she is not Haron’s biological parent, she has maintained a “psychological parent relationship” with him during most of his life and particularly during the two years before her daughter’s death; while, Harón enjoyed only “limited and casual visitation” by his father. Consequently, she contends, as the psychological parent she should be awarded custody. Mrs. Johnson relies on the following language in In re Mr. & Mrs. J.M.P. Applying for Adoption, 528 So.2d 1002 (La.1988), appeal after remand, 536 So.2d 424 (La.1989), a custody suit involving a biological parent and adoptive parents:
The court should prefer a psychological parent (i.e., an adult who has a psychological relationship with the child from the child’s perspective) over any claimant (including a natural parent), who, from the child’s perspective, is not a psychological parent. To award custody to a person who is a “stranger” to the child would unnecessarily risk harming the child where the other claimant has, on a continuing, day-to-day basis, fulfilled the child’s psychological needs for a parent as well as his physical needs. (Citation omitted.)
Whether any adult becomes the psychological parent of a child is based on day-to-day interaction, companionship, and shared experiences. (Citations omitted.) The role can be fulfilled either by a biological parent or by any other caring adult — but never by an absent, inactive adult, whatever his biological or legal *1173 relationship to the child. (Citations omitted.) Thus, neither the biological relation nor the fact of legal adoption is any guarantee that an adult will become the psychological parent of a child.
528 So.2d at 1013.
None of the witnesses ever testified that Mrs. Johnson has continuously or exclusively provided Harón with food, shelter, clothing, and emotional and psychological support since his birth, nor even that she has ever had exclusive physical custody of him. Although she undisputedly has been a loving grandmother and has more involvement in Haron’s life than most grandparents due to his mother’s mental illness, she never had sole custody of Harón while Yvette Johnson was alive. Harón and his mother did not even move to New Orleans where Mrs. Johnson lived until Harón was three years old. Yvette Johnson never abandoned her children or lived apart from them; rather, the testimony of all the witnesses was that she and her children lived with Mrs. Johnson off and on and only stayed with her continually for the two years before her death. Accordingly, Mrs. Johnson’s situation is distinguishable from cases such as Gordy v. Langner, 502 So.2d 583 (La.App. 3d Cir.), writ denied, 503 So.2d 494 (La.1987), and Boyett v. Boyett, 448 So.2d 819 (La.App. 2d Cir.1984), where the maternal grandparents had legal and physical custody of the child due to the mother’s act of surrender.
Even assuming that Mrs. Johnson has established herself as Haron’s “psychological parent,” rather than just a loving grandmother, Mr. Sullivan is Haron’s “psychological parent” as well. Mr. Sullivan is no “stranger” to Harón and is not an “absent, inactive” parent. Since Haron’s birth, he has acknowledged himself as Haron’s father, has provided financial support to Harón, has telephoned and spoken with Harón once a month, and has visited with him on holidays and during the summers. The Court appointed experts reported that Harón and his father obviously love each other and have a father-son relationship. Given these facts and the strength of the bond between Harón and his father, Mr. Sullivan is Haron’s “psychological parent” as well as his biological father.
In sum, we find that the facts do not support Mrs. Johnson’s contention that she is Haron’s sole “psychological parent” with a superior right to custody over Mr. Sullivan, and her reliance on In re Mr. and Mrs. J.M.P. is misplaced.
If Mrs. Johnson is not the psychological parent, on an equal footing with the biological parent, can she yet obtain custody? Mrs. Johnson contends awarding custody to Horace Sullivan would be detrimental to Harón and not in his best interest. She urges this Court to apply article 146(B) and raises these issues: As used in La.C.C. Art. 146(B), what degree of proof, “a preponderance of the evidence” or “clear and convincing evidence,” is required to prove that an award of custody to a parent would be detrimental to the child and the award of custody to a non-parent is required to serve the best interest of the child? Has the evidence presented in this case met the degree of proof required?
Wood and Deville, supra, require a showing that the parent is an unfit parent — forfeiting parental rights — before he or she may be deprived of custody. These decisions of our Supreme Court were decided before Article 146(B) was amended to permit courts to award custody to a non-parent. While Art. 146(B) is clearly applicable to temporary custody in disputes between parents, it is not at all clear Art. 146(B) is to be extended to the present situation where permanent custody is sought by both a parent and a non-parent.
However, we need not decide whether Art. 146(B) is merely of some guidance, as this Court has held, or controlling as other Circuits decided, or if Art. 146(B) supplants or adds to the Supreme Court’s test of Wood and Deville, because we find the maternal grandmother did not prove by the appropriate evidentiary standards either that Horace Sullivan was an unfit parent, under Wood and Deville, or that an award of custody to Horace Sullivan would be detrimental to the child and that the award to a non-parent is required to serve the best interests of the child under Art. 146(B). The burden of proving that the parent’s custody would be detrimental to the child lies with the non-parent. Gras v. *1174 Gras, 489 So.2d 1283 (La.App. 2d Cir.1986), writ denied 493 So.2d 1222 (La.1986); Boyett v. Boyett, 448 So.2d 819 (La.App. 2d Cir.1984).
Mrs. Johnson argues that this court should apply a preponderance of the evidence standard, rather than requiring clear and convincing evidence. While it is true that Louisiana appellate courts have used differing standards of proof in deciding child custody cases under Article 146(B), Santosky v. Kramer, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982), holds that clear and convincing evidence is required in parental rights termination proceedings before a court may deprive a natural parent of his fundamental liberty interest in having the care, custody, and control of his child. The same standard was required in child custody cases prior to the enactment of Article 146(B). State in Interest of Jones v. Jones, supra.
Although the record proves Mr. Sullivan committed an aggravated battery on Yvette Johnson, there is no evidence in the record which would indicate that Mr. Sullivan would physically harm Harón. As a matter of fact, the record shows this was the only time Mr. Sullivan did a criminal or violent act. None of the psychological or psychiatric tests or examinations revealed any criminal tendencies on Mr. Sullivan’s part, and none of the experts could find any reason to deny custody to him.
Mrs. Johnson has failed to prove her case under either standard. There is simply no evidence in the record that Horace Sullivan is an unfit parent who has forfeited his parental rights or that an award of Harón to his father would be detrimental, nor that awarding custody to Mrs. Johnson is required to serve Haron’s best interest. We find that the evidence supports the judgment of the Trial Court; the Trial Court’s findings of fact are not manifestly erroneous; the Trial Court did not abuse its vast discretion in this case.
AFFIRMED.