409 So.2d 1254 (1982)
Alton Lee LITTON, Plaintiff-Appellant,
v.
Fai R. LEWIS, Defendant-Appellee.
Fai R. LEWIS, Plaintiff-Appellee,
v.
Alton Lee LITTON, Defendant-Appellant.
Nos. 14740, 14741.
Court of Appeal of Louisiana, Second Circuit.
January 25, 1982.
Herman L. Lawson, Mansfield, for plaintiff-defendant-appellant, Alton Lee Litton.
Smith & Bowers, by Glen H. Smith, Shreveport, for plaintiff-defendant-appellee, Fai R. Lewis.
Before PRICE, HALL and FRED W. JONES, JJ.
FRED W. JONES, Judge.
The father of a 13 year old girl, whose mother had died, appeals a trial court judgment in these consolidated cases awarding legal custody to the child's maternal grandmother. We affirm.
*1255 Alton Lee Litton and Loy Faye Lewis Litton were married in 1957 and established their matrimonial domicile in DeSoto Parish. Their first child, Lisa Faye, was born about three years thereafter. Some time in the early 1960's Mrs. Litton began to suffer increasingly from the adverse effects of multiple sclerosis, a progressively debilitating disease with which she was afflicted. Consequently, at the request of the Littons, Fai R. Lewis, Mrs. Litton's mother, moved in to assist with household duties and to help care for Mrs. Litton. By 1966 Mrs. Litton could no longer walk.
Heather Lorraine, the other child of the marriage, was born about two years after her mother ceased being ambulatory. From birth this child was cared for primarily by her maternal grandmother.
Because of marital difficulties the Littons physically separated in October 1971. Mrs. Litton, along with her mother and two children, left the matrimonial domicile in rural DeSoto Parish and established a residence in Mansfield, several miles away. In December 1971 Mrs. Litton was granted a judgment of separation in which her custody of the two girls (previously awarded pendente lite in a summary proceeding) was confirmed. Lisa was then 11 years of age and Heather was two. Because of Mrs. Litton's increasing physical infirmities, Mrs. Lewis not only ministered to the needs of her daughter on a daily basis but also cared for the two children.
Mrs. Litton was granted a divorce from her husband in April 1973 and was awarded the permanent custody of the two children born of the marriage. Litton remarried after the divorce. His new spouse had four children who lived with her and Litton. Thereafter, Mrs. Loy Faye Litton and her former husband found it necessary to litigate differences which arose over child support payments and child visitation rights.[1]
During the ensuing years Loy Faye Litton and the two girls continued to live with Mrs. Lewis in Mansfield. Mrs. Litton's continually declining health required that her mother assume an expanding role as surrogate mother of the children. Pursuant to court order, Litton paid $200 per month alimony for the support of his former wife and $380 per month for the support of his two daughters.
Loy Faye Litton died in October 1980. Thereafter, Litton sent to Mrs. Lewis $180 per month for the support of Heather, asserting that his obligation to support Lisa ceased because she had reached the age of majority. Both girls continued living with their grandmother.
On April 20, 1981 Litton petitioned for a writ of habeas corpus, asking for the permanent custody of Heather (then 13 years of age) who was alleged to be in the physical custody of Mrs. Lewis. On the same day, Mrs. Lewis filed suit against Litton for legal custody of Heather and for child support. The two proceedings were consolidated for trial, which was held on April 23, 1981.
In oral reasons for judgment the trial judge concluded that Litton's "demonstrated lack of interest" in Heather warranted a finding that the father had forfeited his right to the child's custody. Consequently, permanent custody of Heather was granted to the maternal grandmother, Mrs. Lewis, who was also awarded a judgment against Litton for child support in the sum of $230.30 per month.
The appellant-father contends that the trial judge erred in finding that he had forfeited his right to Heather's custody. Mrs. Lewis answered the appeal, requesting an increase in the child support award.
The law which applies in a child custody dispute between a parent and a nonparent is well established. The parent's right to custody is superior unless it is proved by the nonparent that the parent is unfit, or is unable to provide a home for the child, or has forfeited parental rights. Deville v. LaGrange, 388 So.2d 696 (La.1980); Wood v. Beard, 290 So.2d 675 (La.1974).
*1256 In this case, since there was no evidence that Litton was either unfit or unable to provide a home for Heather, the primary issue posed on appeal is whether the record supports the trial court's determination that Litton forfeited his parental right to the child's custody.
Upon appellate review the determination of the trial judge in child custody matters is entitled to great weight. Fulco v. Fulco, 259 La. 1122, 254 So.2d 603 (1971); Paul v. Cloud, 378 So.2d 586 (La.App. 3rd Cir. 1979), writ refused; Cawthorne v. Williams, 313 So.2d 915 (La.App. 2d Cir. 1975). However, as we pointed out in Burt v. McKee, 384 So.2d 489 (La.App. 2d Cir. 1980), "forfeiture of custody must be expressly determined and well-supported."
In Wilson v. Wilson, 307 So.2d 674 (La. App. 2d Cir. 1975), we reversed a district court judgment denying a father's request to change custody of children from their maternal grandparents, with this holding:
"There is no showing of any intent on the part of plaintiff to have abandoned the children to the grandparents. Although he was wrong in not furnishing financial support during the period from November of 1972 through the date of trial, we do not consider this factor standing alone to be sufficient to deprive him of his natural right to custody of his children."
A lower court's denial of the father's attempt to change child custody from the maternal grandmother was also reversed in Powell v. Barsavage, 399 So.2d 1308 (La. App. 4th Cir. 1981), based upon the appellate court's conclusion that there was no evidence in the record indicating either unfitness of the father or a forfeiture of parental rights. With respect to the latter factor it was noted that the child spent a great deal of time with the father and his new family and had a good relationship with them. There was also evidence that the father had seen to the child's medical needs during the years she lived with her grandmother.
On the other hand, forfeiture of parental rights was found in State ex rel. Paul v. Peniston, 235 La. 579, 105 So.2d 228 (1958), where the parents permitted their daughter to live for nine years with her aunt and uncle, who reared the child as their own.
In Paul v. Cloud, supra, a mother was granted a divorce and awarded child custody. Subsequently, while living with the child at the home of her mother, the child's mother died. By will the decedent had named her brother as the child's tutor. In a contest between the father and the uncle (named tutor in the will) for the child's custody, the appellate court affirmed a trial court judgment in favor of the uncle, commenting:
"The evidence reveals that aside from two or three visits when Jason was an infant and one visit just prior to Wanda Paul's death, Mr. Paul has never in eleven years indicated any particular interest in his son....
"While we are unwilling to say that Mr. Paul has abandoned Jason or that he has forfeited the preferential right to custody which the law accords a parent, we do believe that at this time Jason and his father are virtual strangers to each other."
In a concurring opinion, Judge Domengeaux construed the father's conduct as "tantamount to an abandonment," resulting in a forfeiture of any preferential rights to custody which the law accorded him as a parent.
In the case at bar it was established that, over the ten year period Heather lived with her mother and grandmother in Mansfield, Litton never made a concerted effort to visit with his child on any systematic basis, either at the grandmother's residence or at his residence in the same parish. To the contrary, the thrust of Litton's testimony was that he left up to the child the initiative for making contacts or visits. He rationalized this by explaining that "she was welcome to call my house or come any time she wanted to." Obviously, it was both unrealistic and unfair for a father to place upon a young child the onus of maintaining a personal relationship with him, particularly *1257 in view of the father's "second family" and the awkwardness inherent in that situation.
Prior to the trial in April 1981, the last contact Heather had with her father was the previous September. There was evidence that during this time she had attempted to reach Litton by telephone at his home, but gave up after three unsuccessful attempts.
Litton never gave Heather a birthday present, conceding that he did not even know her birthday. During her lifetime he gave the child only two Christmas presents.
There was no evidence that Mrs. Lewis in any way sought to prevent Litton from visiting with Heather or discouraged the child from contacting her father.
Although Litton did, pursuant to court order, provide for Heather's financial support, this was apparently the primary extent of his expression of concern for the child's wellbeing. Obviously, a father's obligation to his child encompasses far more than the mere duty to furnish financial support.
In summary, we glean from the record the picture of a father who, rather than even purporting to assume an active role in maintaining a close relationship with his young daughter over the years and providing her with the emotional support and expressions of parental concern normally expected of a father, for some ten years exhibited a studied indifference to and disinterest in his daughter's welfare. Consequently, the trial judge's determination that Litton's "demonstrated lack of interest" in Heather resulted in a forfeiture of his priority right as a parent to her custody is amply supported by the record.
Having made this finding, we experience no difficulty in agreeing with the trial judge that Heather's best interest will be served by placing her in the legal custody of the maternal grandmother, Mrs. Lewis. After all, Mrs. Lewis has been the child's surrogate mother for most of the child's life and Litton has raised no serious question concerning the grandmother's ability to properly care for Heather.
The appellee, in answering the appeal, argues that the monthly child support award of $230.30 is inadequate and should be increased.
Parents have the legal obligation to support, maintain and educate their children. La.Civil Code Art. 227. The amount of support awarded must be based upon the needs of the child and the circumstances of the parent. La.C.C. Art. 231.
Here the trial judge found that Mrs. Lewis required $500 per month to meet Heather's needs. The child received monthly Social Security benefits in the amount of $269.70. Therefore, the child support award on a monthly basis was the difference between these two figures, or $230.30. There was evidence that Litton had a gross income in 1979 of $26,037 and in 1980 of $22,858. Considering the needs of the child and the circumstances of the parent, we do not find that the trial judge abused his broad discretion in fixing the amount of child support in this case.
For these reasons, we affirm the judgment of the district court, at appellant's cost.
NOTES
[1] See Litton v. Litton, 299 So.2d 458 (La.App. 2d Cir. 1974).