CUTRER, Judge.
This is an appeal by Robert Emery Canci-enne from a trial court judgment granting custody of his two daughters to his deceased wife’s mother, Rosey Ann Berry Newman. We reverse.
*342 Cancienne was married to Mary Esther Darlene. Of this marriage was born two girls, Lisa and Donna, whose custody is the subject of this suit. During their marriage Cancienne, his wife and children, lived on the same street (Ninth Street in Lake Charles, Louisiana) as the maternal grandmother, Mrs. Newman. In September 1976, Cancienne and his wife were legally separated. In May 1977, Mrs. Cancienne died. Cancienne reassumed custody of his two minor children. Lisa was 11 and Donna was 6 at the time of their mother’s death.
Cancienne found he needed help in caring for his children. Mrs. Newman, who was also a neighbor, offered to look after the girls while the defendant was at work. Defendant agreed to this arrangement. No mention of “support” was made at that time. After Mrs. Cancienne’s death the youngest child, Donna, lived practically exclusively with her grandmother. Lisa moved freely between her father’s home and her grandmother’s home. In November 1977, Cancienne remarried. Cancienne, his wife and Lisa moved away from Ninth Street. Donna stayed with Mrs. Newman.
Mrs. Newman sued for custody of the girls in November 1977. After a hearing in January 1978, Cancienne was awarded custody of his children. After being awarded legal custody of both Lisa and Donna, Can-cienne consented to Mrs. Newman’s request that Donna continue living with her. Can-cienne’s second marriage was short lived. In June 1978, Cancienne and Lisa returned to Ninth Street. Lisa returned to the pattern of staying with both Cancienne and Mrs. Newman.
In June 1981, Cancienne remarried. He moved into his present wife’s home in Moss Bluff, Louisiana, a community approximately ten miles north of Lake Charles. The children stayed with Mrs. Newman.
On September 21, 1981, Mrs. Newman filed this rule seeking custody of the children. She alleged her financial inability to support the girls and sought child support payments from the defendant. On September 24th, Cancienne moved his children into his home in Moss Bluff and enrolled them in school. On September 28th, Mrs. Newman picked Donna up from her school in Moss Bluff and took her to Vidor, Texas. Lisa remained with her father and attended school in Moss Bluff. On October 1, 1981, Cancienne sought a writ of habeas corpus directing Mrs. Newman to return Donna to his custody. Service of this writ was never perfected and the writ was never heard. On December 6, 1981, Lisa moved to Texas and joined Mrs. Newman.
Mrs. Newman and both girls returned to Lake Charles in January 1982, for a hearing on this rule. They were still residing in Texas but Mrs. Newman indicated she would return to Lake Charles when the custody was resolved. The trial judge recessed the hearing to allow time for psychological evaluation of all of the parties involved and awarded temporary custody to Mrs. Newman. The trial court heard the remainder of this case on June 14, 1982. Mrs. Newman and the girls evidently returned to Lake Charles before the end of the school term because testimony in June indicated both girls had made up the work they had missed while in Texas and both girls had passed to their next grade; Lisa, 12th and Donna, 6th. The report of the court appointed psychologist was examined by the court and both sides. Upon completion of the hearing, the trial judge, in oral reasons, awarded permanent custody of both girls to Mrs. Newman and ordered Cancienne to pay child support in the amount of $200.00 per month per child, retroactive to September 21, 1981, the date suit was filed.
Cancienne has appealed challenging the trial court’s custody award and the correctness of the retroactive award of child support.
Wood v. Beard, 290 So.2d 675 (La.1974), the cornerstone of the applicable law in our state, held that when parents compete with non-parents for the custody of children, “[t]he parent’s right to custody is superior, unless the parent is unable or unfit, having forfeited parental rights.” The Louisiana Supreme Court has limited the basis for *343 rebuttal to these three situations in Deville v. LaGrange, 388 So.2d 696 (La.1980).[1]
In his oral reasons for judgment the trial judge cited Deville, supra; Litton v. Lewis, 409 So.2d 1254 (La.App. 2nd Cir.1982); and Burt v. McKee, 384 So.2d 489 (La.App. 2nd Cir.1980). After extracting the correct rule of law from these cases the trial judge said:
“... In this case, the evidence is clear that Mr. Cancienne is certainly not an unfit person to have custody of his children. The evidence also indicates that he certainly has better physical facilities than Mrs. Newman.[2] ... As to the forfeiture of parental rights, it appears to the Court that Mr. Cancienne has forfeited his parental right by his failure to provide or see that necessary clothing and facilities and so on have been provided for his children.”
(Emphasis ours.)
A trial judge’s determination in a child custody case is entitled to great weight on appellate review and will not be disturbed in the absence of manifest error. Deville v. LaGrange, 379 So.2d 37 (La.App. 3rd Cir.1979), aff’d, 388 So.2d 696 (La.1980). However, forfeiture of custody must be expressly determined and well supported. Litton v. Lewis, supra. Further, a finding of forfeiture or parental rights cannot be presumed. Hall v. Hall, 367 So.2d 162 (La.App. 2nd Cir.1979). The record must support such a finding.[3] Thus, the only issue in this case is whether the trial judge was clearly wrong in finding that Cancienne had forfeited his parental rights.
Cancienne never gave any financial assistance directly to Mrs. Newman. However, Mrs. Newman did receive monthly. Social Security checks. At the time of trial the sum was $127.80 per child. Mrs. Newman had income for her support as she was employed and earned $500.00 per month. Cancienne, until June 1981, and with the exception of his seven month absence during his marriage in 1977 and 1978, lived on the same street as Mrs. Newman and saw his children practically every day. He purchased clothes and gifts for the girls on their birthdays, Christmas and other special occasions. Mrs. Newman never indicated to Cancienne she could not adequately provide for the children with the Social Security payments she received. Cancienne was in a position to see that his children were being furnished the necessities of life and, being financially capable, he provided some of the luxuries. As Lisa reached her teen years Cancienne bought her a motorbike and, later, a car. The girls were never without the necessities of life and Cancienne never refused to provide for any need he knew existed.
The parent-child bond enjoys, as it should, great protection under our law. The fact that a parent, with legal custody, who acquiesces in the desires of his children and the children’s grandparent that they be together, does not, without more, constitute an intent to forfeit his parental rights relative to those children.
*344 Our law clearly states that, when a parent competes with a non-parent over the custody of the parent’s children, the parent shall prevail unless the non-parent shows the parent is unable to care for the children, is unfit to have custody or has forfeited his rights to the children. The trial court erred in finding that the defendant forfeited his parental rights to his children. The defendant is entitled to a continuation of the custody of his two children. Having come to this conclusion, the judgment of the trial court, awarding custody of the two children to Mrs. Newman and also awarding child support in the amount of $200.00 per month per child retroactive to September 21, 1971, and to continue in the future at the same rate, shall be reversed.
For the reasons above, the judgment of the trial court is reversed and set aside. The plaintiff’s rule for custody and child support is hereby dismissed. Costs of the trial court and this appeal are assessed to plaintiff-appellee.
REVERSED AND RENDERED.

. In Deville, after repeating the rule of Wood, the Supreme Court stated: '
“We ajso indicated what forms these compelling reasons may take: proof that the parent has forfeited his or her right to parenthood, that he or she is unfit, or that he or she is unable to provide a home for the child.”

. The record fully supports the trial court’s finding of fitness arid better facilities to care for the children. Cancienne’s income was $27,-559.14 and he and his wife live in a nice brick home in Moss Bluff. Counsel for Mrs. Newman only argues the forfeiture of parental rights.

. The United States Supreme Court recently addressed the question of what “due process” required before the State of New York could permanently sever parental relationships. The applicable New York statute mandated the State prove that a child was permanently neglected by a “fair preponderance of the evidence.”
The court noted a fundamental liberty interest of natural parents in the care, custody and management of their children. The court also stated this interest does not evaporate simply because the parent has not been a model parent. The court held that before a state may terminate parental rights the state must prove its allegations by “clear and convincing evidence.” Santosky v. Kramer, 455 U.S. 745, 1402, 102 S.Ct. 1388, 1402, 71 L.Ed.2d 599 (1982).