528 So.2d 672 (1988)
Shirley Lorine POUNDERS, Appellant,
v.
Glenda Diane Pounders ROUSE, Appellee.
No. 19617-CA.
Court of Appeal of Louisiana, Second Circuit.
May 4, 1988.
*673 McIntyre & McIntyre, by E. Rudolph McIntyre, Jr., Winnsboro, for appellant.
Stephens & Stephens by James M. Stephens, Winnsboro, for appellee.
Before JASPER E. JONES, FRED W. JONES and LINDSAY, JJ.
JASPER E. JONES, Judge.
This is a custody dispute. The appellant is Shirley Pounders, the maternal grandmother. The appellee is the appellant's daughter, Diane Pounders Rouse. The maternal grandmother appeals a judgment awarding custody of the minor child Crystal Pounders to the child's natural mother, Diane Pounders Rouse.

FACTS
Shirley Pounders and her daughter, Diane Pounders Rouse, have engaged in litigation over custody of Crystal Pounders since June of 1985. Crystal Pounders was six years old at the time this custody battle was initiated by appellant.
Diane Pounders was eighteen years old at the time she gave birth to Crystal out of wedlock on December 26, 1980. The name of the father is not listed on the child's birth certificate. The appellant allowed her daughter and Crystal to live with her in an apartment in Winnsboro, Louisiana immediately after the mother gave birth to the child. Mother and child remained there approximately one year.
In 1981, Diane married Madison Lilly. Diane and Crystal moved to another apartment in Winnsboro and lived there for approximately one year. Diane and Madison were subsequently divorced but during this time period the mother gave birth to her second child, Travis Lilly. The appellant visited both grandchildren regularly.
In 1983, Diane and her young son Travis moved to Angleton, Texas. Diane voluntarily left Crystal with appellant in Winnsboro, where the child remained until the grandmother filed suit for custody. The mother contends she left Crystal with the appellant with the clear understanding that when she became financially stable Crystal would come to live with her in Texas.
In Angleton, Texas, Diane met Willie Rouse, a thirty-seven year old man who has worked for Dow Chemical for the past fifteen *674 years as a machine operator. Diane Pounders and Willie were married in November of 1985.

PROCEDURAL HISTORY
The appellant sought custody of Crystal by petition filed June 24, 1985. Diane answered the petition and also sought custody of her daughter. Trial was had and by judgment rendered November 15, 1985 custody was awarded to the appellant. Included in the judgment was a provision ordering the Louisiana Department of Health & Human Resources and its sister organization in Texas to conduct home studies of the parties in each locale, to be submitted to the trial court for further review. By judgment signed June 6, 1986 the mother was granted visitation privileges allowing her to keep Crystal in Texas four weeks during the summer. On July 25, 1986, Diane filed a rule for change of custody. Trial was conducted on this rule on April 14, 1987 wherein the trial judge limited evidence submitted to that which had transpired since November of 1985. On August 10, 1987, after receiving psychological evaluations performed on Crystal, the trial judge awarded custody of Crystal to her mother, Diane.

CHANGE OF ORIGINAL CUSTODY DECREE
The appellant contends the mother did not show a change in circumstances materially affecting the welfare of the child which would necessitate a change in the prior custody order as required by Bergeron, infra. The appellant contends the trial court erred in not applying this standard to the circumstances to make the custody determination. Alternatively the appellant contends it is in the best interest of the child for custody to remain with her maternal grandmother.
Where a considered decree of custody has been rendered, there must be a showing of a change in circumstances materially affecting the welfare of the child to justify a change in custody. Bergeron v. Bergeron, 492 So.2d 1193 (La.1986).[1] Where no considered decree of custody has been rendered, the test to be applied in a change of custody action is the best interest of the child. Dungan v. Dungan, 499 So.2d 149 (La.App. 2d Cir.1986); Bergeron, supra. The paramount consideration in child custody matters is the best interest of the child. Bergeron, supra. A parent in a custody contest with a nonparent has a paramount right to custody of the child. This paramount right of custody can be outweighed only by a sufficiently grave detriment to the child's best interest requiring that custody be awarded to a nonparent. Boyett v. Boyett, 448 So.2d 819 (La. App. 2d Cir.1984); LSA-C.C. art. 146(B).[2]
We conclude the judgment awarding custody of Crystal to the grandmother is not a considered decree of permanent custody under the reasoning of Bergeron and accordingly does not invoke the standards set forth therein. A review of the judgment awarding custody to the grandmother reveals the judgment directed home studies to be submitted to the court for further review. By the very terms of the judgment, the trial court recognized the custody award therein was not the final determination of permanent custody. Inherent within the judgment awarding appellant custody is a determination by the trial court to obtain further information for consideration of permanent custody. The new information was referred to by the trial judge in the court's oral reasons for *675 the judgment appealed, wherein the trial judge referred to the home studies as guidance for making the award.
Having determined the change of circumstances rule for modification of a considered decree of permanent custody is inapplicable to this case, we address the appellant's second contention that the custody change made by judgment appealed was not to the best interest of the child.
In determining whether the permanent award of custody to the mother by the trial court was correct, we note the controlling rule of law in this case recognizes the parent's superior right to custody over a nonparent, to be outweighed only on a showing of grave detriment to the child's best interest to be made by the nonparent. We apply this standard to the facts presented for our review.

CUSTODY OF THE CHILD
Early in the proceedings the trial court ordered the aforementioned home studies to be conducted through the DHHR. The trial court later ordered psychological evaluations of Crystal.
The home studies of both the grandmother and the mother revealed both parties able to provide suitable home environments for the child. The psychological evaluations revealed Crystal is a very bright child who tested an I.Q. of 121. The tests further revealed Crystal to be having difficulty dealing with the considerable amount of conflict present among the family members. There was also made apparent a considerable bond between the grandmother and Crystal.
The record reveals the grandmother has been extraordinarily devoted to Crystal. Mrs. Pounders testified as to the daily activities she and the child share. Her testimony reveals she and Crystal reside in a two-bedroom apartment. Every day the grandmother ensures Crystal is properly fed and dressed before she rides the bus to school. Crystal performs well in school due to daily attendance to homework with the grandmother's assistance. Crystal participates in beauty pageants with the support of her grandmother and attends church regularly. The grandmother has no means of transportation, but various family members who live nearby see that Crystal is afforded social outings to children's parties and the zoo. Made most apparent in the testimony of the grandmother is her extreme devotion to the child, corroborated fully by the testimony of Dottie Baskin and Mitch Reynolds, two friends of the family.
The home study of the mother's home in Texas reflects an equally acceptable environment. The mother and her son Travis live with her new husband on acreage owned by Mr. Rouse. The mother testified Mr. Rouse cares for Travis as if he were his own son. Mr. Rouse testified he fully supports his wife's actions to obtain custody of Crystal. The family attends church regularly. Mr. Rouse's parents testified the couple's relationship is stable, both are very good parents, and education is emphasized in the household.
There are contained in the record allegations of sexual abuse made by Crystal against a boy in school named Curly who allegedly "touched her between the legs". Similar allegations were made by Crystal against individuals named Richard and Donald, friends of the Rouses who live nearby in Texas. The trial judge discounted these allegations after reviewing a final psychological examination submitted August 3, 1987. The examiner reported Crystal stated she "made up" the story about Donald and Richard because she thought it would enable her to continue living in Louisiana with her grandmother.
The only detrimental evidence presented by the grandmother were statements made by her indicating her belief her daughter "ran off and left Crystal"; that she doesn't believe her daughter has reformed from her youthful waywardness; and that Crystal tells lies after visits to Texas. Aside from these allegations, no other questionable circumstances were presented concerning the mother's present lifestyle. The mother contradicted the grandmother's testimony stating she has never stopped trying to retain custody of Crystal. The trial judge noted in reasons for judgment the *676 record reveals the mother has in no way forfeited her desire to raise Crystal.
Based upon the evidence presented, the trial judge found no circumstances detrimental to the best interest of the child surrounding the lifestyle of Diane. Conceding the grandmother exerted all effort to afford the child a stable environment, the trial judge awarded permanent custody of Crystal to Diane, subject to liberal visitation rights granted to the grandmother.
We agree the award of custody to the mother is in accord with established principles of law and was required on these facts to serve the best interest of the child. We further note the child's best interest will be better served by being exposed to a more traditional family environment composed of two parents and where she will be raised with her younger brother, Travis. We find no abuse of the trial court's discretion in making the award.
AFFIRMED.
NOTES
[1] The supreme court in Bergeron noted the movant's burden of proof is heavy:

When a trial court has made a considered decree of permanent custody the party seeking the change bears a heavy burden of proving that the continuation of the present custody is so deleterious to the child as to justify a modification of the custody decree, or of proving by clear and convincing evidence that the harm likely to be caused by a change in circumstances is substantially outweighed by its advantages to the child.
[2] LSA-C.C. art. 146(B) provides:

B. Before the court makes any order awarding custody to a person or persons other than a parent without the consent of the parents, it shall make a finding that an award of custody to a parent would be detrimental to the child and the award to a nonparent is required to serve the best interest of the child.