# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 11-886

RICHARD L. GILL

VERSUS

GABRIELLE A. BENNETT & LAURIE BRIDGES

**********

APPEAL FROM THE
THIRTIETH JUDICIAL DISTRICT COURT
PARISH OF VERNON, NO. 80,972-A
HONORABLE VERNON B. CLARK, DISTRICT JUDGE

**********

## MARC T. AMY
## JUDGE

**********

Court composed of Marc T. Amy, Elizabeth A. Pickett, and J. David Painter, Judges.

**AFFIRMED.**

Madison Clay Williams
Williams & Nelson
Post Office Drawer 1810
Leesville, LA   71496
(337) 238-4704
COUNSEL FOR PLAINTIFF/APPELLEE:
    Richard L. Gill

Gabrielle A. Bennett
15350 A. Murphy Street
Ft. Polk, LA   71459
(337) 208-3863
    In Proper Person

Laurie Bridges
102 Roberts Street
Merryville, LA   70653
(337) 825-2018
    In Proper Person

**AMY, Judge.**

The plaintiff brought this action, seeking to resolve a custody dispute. After a hearing, the trial court awarded joint custody to the mother and father and awarded visitation to the grandmother. The grandmother appeals. For the following reasons, we affirm.

### Factual and Procedural Background

The subject of this custody dispute, Madison Bennett, was born in 2005 to the plaintiff, Richard Gill, and the defendant, Gabrielle Bennett (now Harmon).[1] The record indicates that, at the time of Madison's birth, Mr. Gill resided in Louisiana and Mrs. Harmon, along with her mother, Laurie Bridges, resided in Indiana. There was testimony that, in 2006, Ms. Bridges became Madison's primary caretaker. Ms. Bridges subsequently obtained an Order of Permanent Guardianship from the Elkhart (Indiana) Superior Court.

In January 2009, after a paternity test confirmed that Mr. Gill was Madison's father, Ms. Bridges, Mrs. Harmon, and Madison moved to Louisiana. The record indicates that Ms. Bridges and Madison initially moved in with Mr. Gill and his family, but that, as relations between the parties became increasingly problematic, Ms. Bridges and Madison moved out. Mr. Gill later filed this action, seeking custody of Madison.

In response to Mr. Gill's custody petition, Ms. Bridges filed several pleadings in the trial court. In her answer, Ms. Bridges asserted that, although Mr. Gill was Madison's biological father, he was not her legal parent. Ms. Bridges later filed a petition seeking a declaration that she was Madison's "de facto" parent. Mr. Gill filed an exception of no cause of action regarding this latter

---

[1] The record indicates that Mr. Gill and Ms. Bennett were unmarried at the time of Madison's birth. After she moved to Louisiana, Ms. Bennett married Jesse Harmon. Accordingly, we will refer to her as Mrs. Harmon in this opinion.

assertion, which was granted by the trial court. After a trial,[2] the trial court awarded joint custody to Mr. Gill and Mrs. Harmon and designated Mr. Gill as the domiciliary parent. The trial court also found that Ms. Bridges was not entitled to legal custody. However, the trial court found that, as contemplated by La.Civ.Code art. 136(B), exceptional circumstances existed and that Ms. Bridges was entitled to reasonable visitation. Thus, the trial court awarded Mrs. Harmon visitation on alternating weekends and awarded Ms. Bridges visitation for one weekend per month.

Ms. Bridges appeals, asserting as error that:

> 1) The trial court erred through an unwarranted abuse of discretion by [its] failure to adjudicate legal parentage of Madison Kay Bennett, a minor child.

> 2) The trial court erred through an unwarranted abuse of discretion by reckless disregard of defendant/appellant, Laurie Bridges, right to be heard and her status, as a person acting as a parent "de facto.["]

> 3) The trial court erred by its failure to establish a jurisdictional basis over the subject matter.

> 4) The trial court erred through and [sic] unwarranted abuse of discretion by overruling mover[']s objection against admitting inaccurate Child Custody Evaluations . . . as evidence.

## Discussion

*Jurisdiction*

In her *pro se* brief to this court, Ms. Bridges contends that, due to the existence of a guardianship order issued by the Elkhart Superior Court, the Louisiana trial court lacked jurisdiction to make a custody determination.

---

[2] Prior to trial, the parties entered into a stipulated interim custody order that provided for joint custody between Mr. Gill and Mrs. Harmon and awarded Mr. Gill domiciliary custody. During a phase-in period, Ms. Bridges was awarded specified visitation. At the end of the phase-in period, Ms. Bridges' visitation was to be limited to when Madison was with Mrs. Harmon. The trial court also ordered that the parties undergo custody evaluations. However, Ms. Bridges was not evaluated, which the trial court attributed to financial concerns.

2

The Uniform Child Custody Jurisdiction and Enforcement Act UCCJEA),

codified at La.R.S. 13:1801-1842, governs the jurisdiction of the Louisiana district

courts to hear child custody matters.  Jurisdiction for determinations of initial child

custody is governed by La.R.S. 13:1813, which states, in relevant part:

> A. Except as otherwise provided in R.S. 13:1816, a court of this state has jurisdiction to make an initial child custody determination only if:
>
> . . .
>
> (2) A court of another state does not have jurisdiction or a court of the home state of the child has declined to exercise jurisdiction on the ground that this state is the more appropriate forum under R.S. 13:1819 or 1820;  and
>
> (a) The child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this state other than mere physical presence.
>
> (b) Substantial evidence is available in this state concerning the child's care, protection, training, and personal relationships.

Particularly relevant to this litigation is La.R.S. 13:1815, which addresses

the trial court's jurisdiction to modify custody where another state has previously

made a child custody determination.  It states, in relevant part:

> Except as otherwise provided in R.S. 13:1816, a court of this state may not modify a child custody determination made by a court of another state unless a court of this state has jurisdiction to make an initial determination under R.S. 13:1813(A)(1) or (2) and:
>
> (1) The court of the other state determines it no longer has exclusive, continuing jurisdiction under R.S. 13:1814 or that a court of this state would be a more convenient forum under R.S. 13:1819[.]

Accordingly, La.R.S. 13:1819(A) provides that the trial court "may decline

to exercise its jurisdiction at any time if it determines that it is an inconvenient

forum under the circumstances and that a court of another state is a more

appropriate forum[,]" and lists the relevant factors that the trial court should take

into consideration when making such a determination.[3] Furthermore, La.R.S. 13:1810 provides that a Louisiana court "may communicate with a court in another state concerning a proceeding arising under" the UCCJEA, that "[t]he court may allow the parties to participate in the communication," and that, with some exceptions, the court shall make a record of the communication.

The record indicates that when Mr. Gill filed his Petition for Custody, there was an Order of Permanent Guardianship issued by the Elkhart Superior Court on December 12, 2007. Evidence adduced at a hearing on a Motion to Recuse the trial court judge[4] indicates that on April 6, 2009, Mr. Gill filed a Petition to Terminate Guardianship in the Elkhart Superior Court. On June 5, 2009, the Indiana trial court issued an order terminating Ms. Bridges' guardianship, noting that the case file did not contain a proof of service of process for Mr. Gill and finding that:

> based upon the fact that the Permanent Guardian, minor child, mother and father all reside in Louisiana and the Court believes that the appropriate forum to address any further guardianship or custody related issues lies in the State of Louisiana. Accordingly, the Court finds Louisiana as a more convenient forum for purposes of addressing "Guardianship-like" and any "custody[-]like" issues.

The Indiana trial court also noted that it had conferenced, via telephone, with the Louisiana trial court on that date.

Louisiana Revised Statutes 13:1802(3) defines a "child custody determination" as "a judgment, decree, or other order of a court providing for the legal custody, physical custody, or visitation with respect to a child." Further, a guardianship proceeding is considered a "child custody proceeding" according to

---

[3] We note that La.R.S. 13:1819 is substantially similar to Ind. Code § 31-21-5-8 (2011).

[4] Ms. Bridges filed a Motion to Recuse, which was referred to another judge pursuant to La.Code Civ.P. arts. 154 and 155. Although a transcript of the Motion to Recuse is not contained in the record, the relevant pages are file-marked by the minute clerk as Ms. Bridges' *in globo* exhibit filed on December 2, 2009 and the minutes from that date indicate that evidence was adduced at the hearing.

La.R.S. 13:1802(4). Thus, the Order of Permanent Guardianship issued by the Elkhart Superior Court constituted a child custody determination made by a court of another state, pursuant to La.R.S. 13:1815. However, before the Louisiana trial court made any determination of custody, the Indiana trial court declined jurisdiction, finding that Louisiana was a more convenient forum and terminating the Indiana Order of Permanent Guardianship.

Therefore, as the Indiana trial court declined jurisdiction, the record supports a finding that the Louisiana trial court had jurisdiction under La.R.S. 13:1813(2). With regard to the requirements of La.R.S. 13:1813(2)(a) and (b), we note that there is evidence in the record that Mr. Gill is a longtime resident of Louisiana and has substantial connections to the state, that the other interested parties in this case, Mrs. Harmon and Ms. Bridges, relocated to Louisiana along with Madison, and that Madison started school in Louisiana. We find no error in the trial court's assumption of jurisdiction in this case.

This assignment of error is without merit.

*Legal Parentage*

Ms. Bridges also contends that the trial court erred in failing to adjudicate Madison's "legal parentage." Ms. Bridges' brief appears to address two issues with regard to Madison's "legal parentage": 1) that the trial court failed to recognize her as Madison's parent, which will be discussed elsewhere in this opinion, and 2) that Mr. Gill had no legal relationship to Madison, and therefore no standing to assert his right to custody.

In *Jones v. Coleman*, 44,543, pp. 7-8 (La.App. 2 Cir. 7/15/09), 18 So.3d 153, 159, the second circuit addressed a biological parent's relationship to his or her children, stating:

5

The United States Supreme Court has declared it "plain beyond the need for multiple citation" that a biological parent's right to "the companionship, care, custody, and management" of his children is a liberty interest far more important than any property right. *In re Adoption of B.G.S.*, 556 So.2d 545 (La.1990), citing *Santosky v. Kramer*, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982), and *Lassiter v. Department of Social Services of Durham County, N.C.*, 452 U.S. 18, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981). Even when the natural father has not lived continuously with his child, he enjoys a similar constitutional protection of his paternal interest when he develops and maintains a substantial relationship with his child by accepting responsibility for the child's future. *In re Adoption of B.G.S.*, *supra*, citing *Lehr v. Robertson*, 463 U.S. 248, 103 S.Ct. 2985, 77 L.Ed.2d 614 (1983).

Furthermore, in *In re Adoption of B.G.S.*, 556 So.2d 545, 551-52 (La.1990) (quoting *Deville v. LaGrange*, 388 So.2d 696, 698 (La.1980)), the Louisiana Supreme Court stated that "[p]arenthood itself confers a right to custody, but that right of parenthood may be forfeited by conduct which denies or rejects one's child."

As an initial consideration, we note that Ms. Bridges first asserted her theory that Mr. Gill had no standing to seek custody or visitation in her Petition for Third Party Custody. However, a review of the record supports a finding that Mr. Gill is Madison's biological father. The record indicates that all of the parties to this litigation acknowledge that Mr. Gill is the biological father of Madison.[5] Given the constitutional protections extended to biological fathers, Mr. Gill is clearly entitled to assert his parental rights. Accordingly, we find no error in the trial court's alleged failure to address the issue of parentage.

This assignment of error is without merit.

---

[5] Ms. Bridges testified that Mr. Gill took a DNA test to establish his paternity of Madison. Although the DNA test results were not introduced into evidence, according to Ms. Bridges' testimony, the results indicated that Mr. Gill was Madison's father. Additionally, in his testimony, Dr. John Simoneaux stated that he reviewed a laboratory report dated September 18, 2008, which indicated that there was a 99.999% probability that Mr. Gill was Madison's biological father. We note that La.R.S. 9:397.3(B)(2)(b), which addresses the admissibility of blood or tissue sampling for determination of paternity states that "[a] certified report of blood or tissue sampling which indicates by a ninety-nine and nine-tenths percentage point threshold probability that the alleged father is the father of the child creates a rebuttable presumption of paternity."

6

*Evidentiary Issues*

Ms. Bridges also contends that the trial court erred in admitting "inaccurate" child custody evaluations into evidence. It is not clear to this court that she has adequately briefed this assignment of error. We note that the gist of Ms. Bridges' argument is that the trial court intentionally excluded her from its judgment ordering child custody evaluations and that she was unable to pay for a child custody evaluation.

The trial court's authority to order psychological evaluations in child custody matters stems from La.R.S. 9:331, which states:

> A. The court may order an evaluation of a party or the child in a custody or visitation proceeding for good cause shown. The evaluation shall be made by a mental health professional selected by the parties or by the court. The court may render judgment for costs of the evaluation, or any part thereof, against any party or parties, as it may consider equitable.
>
> B. The court may order a party or the child to submit to and cooperate in the evaluation, testing, or interview by the mental health professional. The mental health professional shall provide the court and the parties with a written report. The mental health professional shall serve as the witness of the court, subject to cross-examination by a party.

The language of Article 331 is permissive and thus, it is within the discretion of the trial court to order such evaluations. *Cerwonka v. Baker*, 06-856 (La.App. 3 Cir. 11/2/06), 942 So.2d 747.

The trial court ordered that "the parties" undergo psychological evaluations. Costs of the evaluations were assessed 75% to Mrs. Harmon and 25% to Mr. Gill. The record indicates that, at a status conference, there was some confusion about whether Ms. Bridges was included in that order. The trial court told Ms. Bridges that "my expectation [was] . . . that I wanted her to get examined if that's what she wanted to do and Dr. [John] Simoneaux thought he was – he would need. Now, if

7

you intend to assert any type of action for visitation or whatever, then you would have to be examined." Ms. Bridges responded that she intended to be examined.

Pursuant to this order, Dr. Simoneaux performed the child custody evaluations and issued a twenty-two page report. At trial, Dr. Simoneaux was accepted as an expert in the field of clinical psychology without objection. He testified regarding his examinations of the parties and his conclusion that it would be in Madison's best interest for Mr. Gill to be awarded domiciliary status. However, at trial, when Mr. Gill moved to introduce Dr. Simoneaux's report into evidence, Ms. Bridges objected, alleging that Mr. Gill and Mrs. Harmon should have paid for her examination. The trial court overruled the objection, noting that the order for examination "was rendered quite a long time ago" and that Ms. Bridges would have the opportunity to question Dr. Simoneaux regarding any deficiencies in the report. We note that, at the earlier status conference, the trial court did not address whether Mr. Gill and Mrs. Harmon were responsible for paying for Ms. Bridges' evaluation.

Ms. Bridges questioned Dr. Simoneaux regarding the materials he reviewed in making his conclusions, whether he considered the factors delineated in La.Civ.Code art. 134, and whether he considered the credibility of the parties. With regard to Ms. Bridges' examination, or lack thereof, Dr. Simoneaux testified that she cancelled at least three appointments with his office. In its reasons for ruling, the trial court found that Ms. Bridges did not obtain a custody evaluation due, primarily, to financial concerns.

Our review of the record indicates that the trial court expected that, if Ms. Bridges intended to assert a right to custody, she would obtain a custody evaluation. Therefore, the trial court left the decision of whether an evaluation would be performed up to Ms. Bridges. Thus, we find no abuse of discretion in

either the trial court's order requiring child custody evaluations for the parties, or in the trial court's admittance of Dr. Simoneaux's report into evidence.

This assignment of error is without merit.

*Custody Determination*

In Ms. Bridges' remaining assignment of error, she asserts that the trial court erred in failing to recognize her as Madison's "de facto" parent.[6] She bases this assertion on her previous status as Madison's permanent guardian and the period of time in which she was Madison's primary caretaker.

This court has found no Louisiana authority, statutory or otherwise, which establishes a "de facto" parental status. However, we note that "[o]ver the years, there has been litigation between 'psychological parents' and parents regarding custody and visitation of children. Most often the cases involved grandparents of children seeking custody or visitation with the children with whom they bonded." *Black v. Simms*, 08-1465, p. 5 (La.App. 3 Cir. 6/10/09), 12 So.3d 1140, 1143.

Louisiana Civil Code Article 133 governs the award of custody to nonparents, stating:

> If an award of joint custody or of sole custody to either parent would result in substantial harm to the child, the court shall award custody to another person with whom the child has been living in a wholesome and stable environment, or otherwise to any other person able to provide an adequate and stable environment.

Before custody is awarded to a nonparent, the nonparent bears the burden of proving that a grant of custody to the parent would be detrimental to the child and that an award of custody to the nonparent is in the best interest of the child. *LeBlanc v. Guillory*, 10-164 (La.App. 3 Cir. 5/5/10), 38 So.3d 490. Furthermore, where there is a conflict between parents and nonparents, the parent has a

---

[6] In brief, Ms. Bridges requests that this court grant her "the legal status as 'de facto parent' to the minor child," and modify the trial court's ruling to award "custody in fact in favor of" Ms. Bridges. Thus, we read Ms. Bridges' assignment of error as contesting only the award of custody and not the award of visitation pursuant to La.Civ.Code art. 136.

paramount right to custody of the child, and may only be deprived of that right for compelling reasons. *Id.*

This court reviews child custody decisions under the abuse of discretion standard. *Leard v. Schenker*, 06-1116 (La. 6/16/06), 931 So.2d 355. Thus, "the determination of the trial judge in child custody matters is entitled to great weight and his discretion will not be disturbed on review in the absence of a clear showing of abuse." *Id.* at 357 (quoting *AEB v. JBE*, 99-2668, p. 7 (La.11/30/99), 752 So.2d 756, 761).

The record indicates that a child custody examination was conducted for each of the parties, with the exception of Ms. Bridges. Dr. Simoneaux, the psychologist who performed the examinations, recommended in his report that Madison reside primarily with Mr. Gill. In his testimony, Dr. Simoneaux stated that he did not see any indications that Madison would come to substantial harm if she remained in Mr. Gill's custody. Mrs. Harmon testified that, in her opinion, Madison should live with Mr. Gill. According to Mrs. Harmon this was because, at the time of trial, she was very emotional and not very stable. Mrs. Harmon acknowledged that it was not good for Madison to be in that kind of environment constantly. Most notably, when asked whether she felt there was any risk of substantial harm to Madison if custody remained with Mr. Gill, Ms. Bridges answered "not if she is allowed visitation with us."

After considering the evidence and hearing the testimony and arguments of the parties, the trial court found that both parents were fit but that it would be in Madison's best interest to live primarily with Mr. Gill. Thus, the trial court awarded joint custody to Mr. Gill and Mrs. Harmon and designated Mr. Gill as the domiciliary parent. The trial court noted that Ms. Bridges wanted custody but that she conceded that she would likely not be entitled to it. Finding no authority

10

which would permit him to do so, the trial court declined to designate Ms. Bridges as a "de facto" parent. However, the trial court considered the length and quality of Ms. Bridges' relationship with Madison and, finding extraordinary circumstances, awarded her visitation pursuant to La.Civ.Code art. 136.

We note that, although Ms. Bridges contends that the trial court did not issue reasons, the trial court issued written reasons in its "Ruling of the Court" on May 10, 2011, and signed a corresponding judgment on June 13, 2011. Based upon our review of the record, Ms. Bridges did not show that an award of custody to Mr. Gill and/or Mrs. Harmon would result in substantial harm to Madison. Given the great deference afforded the decision of the trial court in child custody matters, we find no error in the trial court's award of custody to Mr. Gill. *See LeBlanc*, 38 So.3d 490; *Pounders v. Rouse*, 528 So.2d 672 (La.App. 2 Cir. 1988).

This assignment of error is without merit.

## DECREE

For the foregoing reasons, the judgment of the trial court concerning custody and visitation for Madison Bennett is affirmed. All costs of this proceeding are assessed to the appellant, Laurie Kay Bridges.

**AFFIRMED.**