DREW, J.
I, This is a custody dispute arising in Louisiana and Texas, relative to a female child who has now turned eight years of age.
Elliot Fell, the father, lives in Harris County, Texas. Prior to moving to Texas in 2010, the father resided in Caddo Parish, Louisiana.
*1178 Robin Hiser, the mother, lives in Bossier Parish.
The parties never married.
The father appeals a Bossier Parish judgment of December 6, 2013, that denied his request to dissolve certain previous orders of the Louisiana court. We affirm.
OLDER LITIGATION
These custody proceedings actually began in February of 2007 when the mother filed a petition for custody and child support in the 26th Judicial District Court, Bossier Parish, Louisiana (“Louisiana court”). A Joint Custody Implementation Plan (“JCIP”) was “finalized” in 2008, and the case lay dormant for four years. At all times, the parties had and still have parents and other family in Caddo and Bossier Parishes.
In 2010, the father moved to Texas for employment reasons, while maintaining domicile in Caddo Parish, Louisiana. The mother later moved to Texas, also for employment reasons. She later testified that at all times she considered herself to be domiciled in Bossier Parish, Louisiana.
THE CURRENT LITIGATION
In May of 2012, the father received a handwritten notice of proposed relocation from the mother. The race to the courthouse began.
|gOn June 3, 2012, the father filed a petition for custody in the 245th Judicial District Court in Harris Country, Texas,[1] (“Texas court”) for which a hearing was scheduled on June 19, 2012. The Texas court issued a temporary restraining order (“TRO”) prohibiting either party from removing the child from the state for the purpose of changing the child’s primary residence.
On June 9, 2012, the Texas TRO was served on the mother in Bossier Parish, at which point she had already set up Louisiana residency for herself and the child.
Three days after being served, on June 12, 2012, the mother filed a petition in Bossier Parish for an increase in child support and for modification of the Louisiana JCIP. She alleged that she was domiciled in Bossier Parish and that the father lived in Katy, Texas. She contended the custody agreement should be modified because of the child’s age and because of the father’s recent aberrant behavior. She further contended that the majority of the weekend visitations should be in Shreveport because the father visited Shreveport often and his family had a home there.
To her discredit, the mother requested ■ that service of process on the father be withheld, and she made no mention of the Texas litigation in her Bossier Parish pleadings.
Also on June 12, 2012, the mother sent the father a second (typed) notice of proposed relocation, advising that she would relocate the child to Bossier City. The stated date of the proposed relocation was June 12, 2012.
|sEven though the mother knew of the Texas lawsuit, she did not appear in Texas on June 19, 2012, when the default was entered, nor did she appear at the July 3, 2012, hearing, when the default judgment was confirmed. The father testified at the Texas hearing that the child should live with him because he was more stable and the child was accustomed to school in Texas.
The Texas court entered an order:
• stating that the Texas court had jurisdiction and that no other court had continuing, exclusive jurisdiction;
*1179 • naming the parents as joint managing conservators, with the father having the exclusive right to designate the child’s primary residence in Harris County or contiguous counties;[2]
• granting the mother visitation; and
• ordering her to pay $480 per month in child support.
On July 20, 2012, the mother filed in the Louisiana court a motion for rule for judgment of past-due child support, contempt, and attorney fees. Service was requested through the father’s Texas attorney.
Also on July 20, 2012, the mother filed in the Louisiana court a petition for TRO and for preliminary and permanent injunctive relief asserting that the child was in a deleterious situation when she was with her father because of his drinking and other negative traits.
The mother alleged:
• she and the child had been domiciled in Bossier Parish since the child’s birth;
f while she lived in the Houston area, she always intended to return to Bossier Parish, and always particularly intended that the child begin kindergarten and be subsequently schooled in Bossier Parish; and
• she terminated her apartment lease in Houston and returned to Bossier Parish in May of 2012.
In late summer of 2012, the Texas court ordered the mother to return the child to the father in Texas and issued a writ of attachment directing law officers in Texas to locate, seize, and deliver the child to the father.
On August 24, 2012, through Louisiana counsel, the father filed a petition in the Louisiana court, requesting that the Texas judgment be made executory in Louisiana. In this pleading, the father asserted that Caddo Parish remained his domicile. He also asserted that he only appeared to make the Texas judgment executory. To his discredit, the father requested that the mother not get advance notice of the filing, for the stated reason of preventing her from leaving with the child.
On August 27, 201&, the Bossier judge signed an ex parte judgment[3] making ex-ecutory the judgment and order of the Texas court, and issuing a civil warrant. Law officers in Louisiana were ordered to take custody of the child and deliver her to her father.[4]
On September 13, 2012, the father’s attorney filed exceptions to the Louisiana proceedings, as to the June 12, 2012, petition, the July 20, 2012, rule for past-due child support and the July 20, 2012, petition for TRO and injunctive relief. In his pleadings, the father’s Louisiana lawyer stated:
[fi“Mrs. Hiser’s relief is in Harris County Texas. Should that court, in conjunction and consultation with this court determine the 26th JDC is the proper jurisdiction/venue for the instant disputes between the parties, so be it.[5] But in the interim, Mrs. Hiser must play by the rules.” (Emphasis added.)
Notice of the mother’s June and July filings was not actually served on the father’s Louisiana lawyer[6] until the day of the hearing, September 13, 2012.[7]
*1180 The exceptions filed by the father’s Louisiana attorney included:
• insufficiency of citation,
• insufficiency of service of process,
• lis pendens,
• improper venue, and
• lack of subject matter jurisdiction.[8]
Before the hearing, the Bossier trial court unsuccessfully tried to call the Texas court, pursuant to the Uniform Child Custody Jurisdiction and Enforcement Act (“UCCJEA”), to discuss which court should have the case,
|,¡Because of the seriousness of the allegations of danger to the mother and the child, the Bossier judge on September 13, 2012:
• granted the La. C.C.P. 3945 emergency temporary custody petition;
• ordered that the Bossier Parish court would assert jurisdiction over these proceedings, pursuant to the UC-CJEA; [9]
• granted temporary custody to the mother; and
• ordered that the child be returned to the mother within three days.[10]
The father took a writ to our court, requesting that the Bossier court’s order of September 13, 2013, be rescinded (“first writ”).
A writ panel of this court ruled as follows on November 1, 2012:
WRIT DENIED; STAY DENIED
Applicant Elliott Fell seeks emergency supervisory review of a September 13, 2012, order of the district court giving temporary custody of a minor child to the child’s mother pending a November 8, 2012, hearing; Fell also seeks a stay of various matters set to be heard on that date.
We find no authority in La. C.C.P. Art. 3945 for the issuance of a custody order in this apparently interstate custody matter which should exclusively be governed by the provisions of the Uniform Child Custody Jurisdiction and En *1181 forcement Act (UCCJEA), La. R.S. 18:1801-1842. However, some of the allegations of fact in the respondent’s emergency petition for custody are in the nature of a threat of mistreatment or abuse that could, upon a proper showing, merit the emergency exercise of jurisdiction by Louisiana under La. R.S. 13:1816. Accordingly, this Court considers that the emergency custody order was rendered under the authority of this article.
17At this juncture, this Court declines to exercise its supervisory jurisdiction to review the merits of the extant emergency custody order given the paucity of facts available and given the pendency of the November 8, 2012, hearing where the merits vel non of the exercise of emergency jurisdiction over the child’s custody can be determined. Because of the importance of that determination of the merits of the emergency order, we further decline to stay the proceedings below; indeed, the trial court should endeavor to make a final determination under La. R.S. 13:1816 as quickly as possible. Insofar as the other matters to be considered at the November 8, 2012, hearing are concerned, the trial court should consider and dispose of the applicant’s exceptions prior to making any ruling on the merits. (Our emphasis.)
On November 5, 2012,[11] in a teleconference with the Louisiana trial court, the Texas trial court declined jurisdiction pursuant to the UCCJEA, in favor of the Louisiana court. On November 6, 2012, the Texas court sent to the Bossier court and to the father’s Texas counsel a written confirmation of its decision declining jurisdiction.[12] We view these communications as effectively disposing of the father’s exceptions.
At the November 8 hearing in Bossier Parish, the father’s Louisiana attorney[13] actually conceded in open court that the Texas court’s actions effectively “mooted” his exceptions on behalf of the | ^father. Later that month, the father’s Louisiana attorney was allowed to withdraw.
For the following 11 months, the Louisiana trial court set about handling the merits of this dispute, including appointing a mental health expert, setting and adjusting the father’s visitation, admonishing both counsel for slightly over zealous conduct,[14] and generally monitoring visitation, as in any other domestic case.[15]
*1182 On October 11, 2013, the father filed a motion to dissolve the prior interim orders, on these grounds:
• that the Texas judgment is controlling;
• that Louisiana had no jurisdiction to issue an award under La. C.C.P. art. 3945;
• that under La. R.S. 13:1816, the court’s jurisdiction is temporary and very limited in duration;
• that it appeared that the grant of jurisdiction by the trial court was to allow the mother to obtain a protective order; and
that because the protective order was dismissed in January 2013, the Bossier court no longer had jurisdiction under La. R.S. 13:1816 as there was no current allegation of further threat.
The hearing on the motion to dissolve orders was held on November 14, 2013. Because some of the briefs were filed on the eve of the hearing, the Louisiana court took the matters under advisement.
On December 3, 2013, the court denied the motion to dissolve orders with lengthy and detailed reasons given for its actions, including:
• that the Bossier court had the initial jurisdiction at the time of the commencement of the proceedings in 2007, pursuant to the UCCJEA and La. R.S. 13:1813;
• that the Bossier court had maintained exclusive, continuing jurisdiction under the UCCJEA and La. R.S. 13:1814;
• that the Texas court had declined jurisdiction in favor of Louisiana; ■
• that the Louisiana court inadvertently signed the August 27, 2012 order making the Texas judgment executory in Louisiana;
• that the Louisiana court now formally vacated the inadvertently signed judgment of August 27, 2012;
• that the existing orders of the Louisiana court were still in effect; and
• that the parties were ordered to abide by the custody arrangement set by the Louisiana court.
To this adverse ruling, the father filed for a supervisory writ (“second writ”) with this court. We converted his writ to the instant appeal, because the December 3, 2013, judgment was an appealable final judgment since it vacated the August 27, 2012, judgment.
The father argues that the only valid custody decree is the Texas judgment, as made executory by the Louisiana court. He proposes that the case return to Texas, or that the Louisiana court return to the base line | ^established by the Texas court. In other words, the father suggests that the Bossier court be bound by a Texas default judgment that was made executory in Louisiana about 10 weeks prior to the decision of the Texas court to decline jurisdiction in favor of Louisiana.
'ANALYSIS
This Louisiana trial court scrupulously followed the letter and the spirit of the UCCJEA by reaching out to the Texas court in September 2012.
*1183 In our writ ruling of November 1, 2012, we instructed the Louisiana trial court to proceed in strict adherence with the UC-CJEA and to reach the merits only after the disposition of the father’s exceptions. This is exactly what the Louisiana trial court did.
On November 5, 2012, three days before the scheduled hearing, the two trial judges were finally able to confer pursuant to the UCCJEA,[16] each agreeing that Louisiana had the better claim for jurisdiction of this matter. Fax confirmation was received from the Texas court on November 6, 2012. Counsel for the father appeared to concede the point. Thus, the Louisiana court, with its long history of involvement in this matter, clearly had jurisdiction.
We note this Louisiana statute:
La. R.S. 13:1835. Recognition and enforcement
A court of this state shall accord full faith and credit to an order issued by another state and consistent with this Act which enforces a child custody determination by a court of another state unless the order has been vacated, stayed, or modified by a court having jurisdiction to do so under Subpart B.[17] (Our emphasis.)
Inin a child custody jurisdictional dispute, the Third Circuit recently ruled that a Louisiana court had jurisdiction over a father’s action to resolve a custody dispute, even though the grandmother had previously obtained an order of permanent guardianship from an Indiana Superior Court, where before the trial court made a custody determination, the Indiana court declined jurisdiction and terminated its Indiana order of permanent guardianship, and where the mother and grandmother had relocated to Louisiana with the child, who had started school in Louisiana. See Gill v. Bennett, 2011-886 (La.App. 3d Cir.12/7/11), 82 So.3d 383, writ denied, 2012-0416 (La.3/7/12), 83 So.3d 1048.
The UCCJEA provides five grounds,[18] in preferential order, that warrant an exercise of jurisdiction over a child in an interstate matter relating to the child’s custody. These provisions may be summarized as follows:
1. Louisiana is or was the home state of the child;
2. Another state lacks jurisdiction, and the child and at least one of the parents has a significant connection with the state and significant evidence relating to custody is found in this state;[19]
3. All courts have declined jurisdiction because Louisiana is the appropriate forum;
4. No other court would have subject matter jurisdiction under the Act; or
||⅞5. The Louisiana court has temporary jurisdiction based on emergency circumstances.[20]
Of these factors, and under these facts, the first three considerations are dead on.
The consultation of the Texas and Louisiana judges, precisely in accordance with the UCCJEA, resulted in the Texas court’s declining jurisdiction and full jurisdiction being conferred on the Louisiana *1184 court. The actions of the Louisiana court were lawful, reasonable, and imbued with common sense. The Bossier court had jurisdiction to vacate its inadvertent ex parte judgment.
Texas does not want this case, and it is not the appropriate forum. Upon acknowledging under the UCCJEA that the superior jurisdictional forum was in Louisiana, the Texas court was required by the UCCJEA to dismiss all proceedings. After the Texas court conscientiously declined jurisdiction, it would be bizarre in the extreme for Louisiana to send this case back to Texas.
Louisiana has jurisdiction. Bossier Parish is the appropriate forum. The same Bossier judge has supervised this case for the last two years. Both parties are domiciled in Louisiana and have extended family in this state.
A child custody decree of one state is subject to modification not only by courts of that state, but also by courts of another state, since the full faith and credit clause has limited application in custody cases. See Revere v. Revere, 389 So.2d 1277 (La.1980).
11SAssuming appropriate contacts, a Louisiana court can obtain subject matter jurisdiction under the UCCJEA if the other state determines that it no longer has jurisdiction. If the other state does not decline jurisdiction, that is another matter. See Otwell v. Otwell, 10-1176 (La.App. 3d Cir.2/9/11), 56 So.3d 1232.
The father’s appeal elevates form over substance. This is not a money judgment; it is a child custody proceeding, and it should be handled in accordance with the UCCJEA, with the Louisiana trial court maintaining flexibility to seek justice, safety, and stability for this young child.
The father’s proposed disposition lacks factual or legal support. His legal position flies directly in the face of the current facts whereby all family members, with any connection to the child, live in northwest Louisiana.
We deny the father’s appeal, at his cost.
DECREE
At appellant’s cost, the judgment denying Elliott Fell’s motion to dissolve is AFFIRMED.

. The father's original Texas pleadings are not in this record. Whether this is an oversight, a considered strategy, or something else, is unknown.

. This is the Texas version of joint custody with the father named the domiciliary parent.

. The Louisiana court later ruled that the judgment of August 27, 2012, was "inadvertently” rendered and signed.

. The record does not reflect whether or not the Louisiana court was advised of the pending matters in Bossier Parish.

. xhis is preciSely what later happened on November 5 2013.

. We can only surmise the details of the extensive in-chambers discussions in the Fall of *1180 2012. Whatever was spoken between the court and counsel in that setting would probably help clarify the unusual proceedings that developed in court.

. The father’s lawyer was technically appearing to secure attorney fees from the mother, relative to his efforts in making the Texas judgment a judgment of the Bossier Court. He had with him exceptions for filing relative to the Louisiana proceedings, indicating that he already knew of the pending Louisiana litigation.

. On December 12, 2012, Sandra Moore executed an affidavit in which she stated that on October 10, 2012, she attempted long-arm service on the father of the petition for increase in child support and modification of the JCIP, the motion and order for rule for judgment of past-due child support and contempt, the petition for a TRO and injunctive relief, the petition for immediate temporary custody pursuant to La. C.C.P. art. 3945(D), or alternatively, the issuance of a rule nisi for sole custody, along with the joint motion to reset the rule dates. The postal package was refused by the father on October 12, 2012. Each of these litigants played games with the system.

. The father worked at Edward Jones in Houston. The mother had also worked there before her move back to Louisiana. At some point, another Edward Jones assistant overheard the father make certain perceived threats against the mother. He was fired because of whatever he said. A police report was made in Bossier City because of the threats. The Bossier judge ordered that until the father appeared before the court, the mother would have sole custody with no visitation for the father. The court also ordered that the order would remain in place until the father actually appeared in Bossier court in the matter.

. By joint motion, counsel for the parties later reset the trial for November 8, 2013.

. This was three days before the scheduled hearing for which our court had given detailed instructions in response to the first writ.

. The Texas judge wrote to the Louisiana judge, “This letter shall confirm our teleconference yesterday in accordance with the UC-CJEA regarding the above numbered causes. Based upon our discussion, I concur with you that your court has jurisdiction over this matter and I will be declining to exercise jurisdiction.” We do not read this as a conditional or limited concession as to Louisiana’s right to handle this case.

. The father’s Louisiana counsel sought to situate himself in the Never-Never Land between appearing here for a limited purpose and semi-actively litigating the entire case for the father. He offered input and kept appearing in court after his original remit was accomplished.

. The attorneys each engaged in fax communications with the Louisiana judge and each other. The trial court instructed counsel to make any filings in the record.

. On August 15, 2013, the Bossier court entered an order that appointed Sandi Davis as mental health evaluator and made her responsible for setting visitation between the child and parents; the mother would follow Davis’s recommendations regarding visitation with the father; neither party would remove the child from Louisiana without court approval; jurisdiction regarding custody would remain vested with the Bossier court; the father would receive substantial visitation *1182 within 45 days if Davis thought it was appropriate; both parties were to set up an office visit with Davis; the father would be given consideration by Davis to make up any visitation he lacked between the May and August 2013 status conferences; and the father would pay all outstanding child support by November 14, 2013. The matter was set for review on November 14, 2013, when holiday visitation would be scheduled. On September 18, 2013, Davis wrote to Judge Cox that visitation every other weekend was about to begin. She added that both parents were cooperating with that schedule. On October 24, 2013, Davis wrote to Judge Cox that the father was going to have weekend visitation with the child in Katy, Texas, at the beginning of November.

. See La. R.S. 13:1810.

. "Subpart B references La. R.S. 13:1813-1822."

. See State ex ret A.UM., 46,082 (La.App.2d Cir.2/16/11), 62 So.3d 185. For the exact text, see La. R.S. 13:1813.

. Both parents are domiciled in Louisiana and have family in Caddo and Bossier Parishes.

. See State ex ret A.U.M., supra.