NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

CA 17-654

KARI DANIELLE GANSON

VERSUS

CHRISTOPHER MICHAEL ARTIGUE

**********

APPEAL FROM THE
TWENTY-SEVENTH JUDICIAL DISTRICT COURT
PARISH OF ST. LANDRY, NO. 14-C-4013-A
HONORABLE JAMES PAUL DOHERTY, JR., DISTRICT JUDGE

**********

VAN H. KYZAR
JUDGE

**********

Court composed of Marc T. Amy, D. Kent Savoie, and Van H. Kyzar, Judges.

AFFIRMED

Donald Lynn Mayeux
Attorney at Law
P.O. Box 1460
Eunice, LA 70535
(337) 457-9610
COUNSEL FOR PLAINTIFF/APPELLANT:
    Kari Danielle Ganson

Abbey L. Williams
Attorney at Law
111 North Court St.
Opelousas, LA 70570
(337) 942-7193
COUNSEL FOR DEFENDANT/APPELLEE:
    Christopher Michael Artigue

Cynthia R. Manuel
Attorney at Law
116 W. Bellevue St.
Opelousas, LA 70570
(337) 678-0662
COUNSEL FOR DEFENDANT/APPELLEE:
    Christopher Michael Artigue

**KYZAR, Judge.**

Kari Danielle Ganson, the plaintiff, seeks reversal of the trial court's order granting joint custody of the parties' minor child, Amilyn Rose Artigue, and designating Christopher Michael Artigue, the defendant and father of the child, as domiciliary parent. Specifically, Kari Ganson seeks reversal of the award of domiciliary status to the father. For the following reasons, we affirm the judgment of the trial court.

## FACTS AND PROCEDURAL HISTORY

Kari Ganson and Chistopher Artigue are the unmarried parents of Amilyn Rose Artigue, who was born on November 11, 2009 in Opelousas, Louisiana. Sometime after the birth of the child, Artigue moved to Ardmore, Oklahoma, with his father and other members of his extended family, while Ganson and the minor child remained in Melville, Louisiana. While in Melville, Amilyn lived with Ganson in a house on Ganson's grandparents' property. However, it is undisputed that Amilyn spent a significant amount of time staying with and being looked after by Ganson's grandparents, as well as by Hope St. Romain, the paternal grandmother of one of Ganson's other children. Hope St. Romain took physical custody and care of both of Ganson's daughters, Amilyn and St. Romain's granddaughter, on an alternating weekly basis with Ganson. Ganson has three children total, though she only had custody of Amilyn. During this time, Artigue had very little interaction with the minor child, and Amilyn was cared for primarily by Ganson, Ganson's grandparents, and Hope St. Romain.

In April 2014, Artigue returned to Louisiana in an attempt to visit and spend time with Amilyn, with both parties eventually agreeing to allow the child to be taken to Oklahoma with her father to meet and spend time with his family there.

Following Artigue's failure to return Amilyn to Louisiana by the date agreed upon, Ganson filed a petition for custody in St. Landry Parish on September 4, 2014. An intake conference was held on October 14, 2014, at which the hearing officer recommended granting supervised visitation to Artigue and domiciliary status to Ganson. Artigue, who was not present at the conference due to failure to be timely served, objected to these findings through his attorney, and the matter was continued. A consent judgment based upon this October 2014 conference was signed and filed on May 5, 2016.

The consent judgment granted sole custody of Amilyn to Ganson and granted supervised visitation rights to Artigue if he so requested. On August 2, 2016, Artigue filed a motion for contempt, attempting to enforce the terms of the consent judgment. He claimed that he had been attempting to exercise visitation for some time and was being prevented from doing so by Ganson. A hearing was held on the motion on August 12, 2016, in which the trial court granted Artigue unsupervised visitation rights and specified holiday visitation.

Pursuant to the August 2016 judgment, Artigue took Amilyn to Oklahoma over the Christmas holiday. When he attempted to return Amilyn to Ganson in January 2017, he was unable to do so because Ganson was incarcerated in the St. Landry Parish jail on a battery charge and an old bench warrant. Artigue then filed an Ex Parte Motion for Temporary Custody and Petition to Modify Custody and Visitation on January 5, 2017, which was granted by the trial court with a hearing date set for February 10, 2017. The trial court also ordered Ganson to immediately submit to a drug screening after allegations of illicit drug use by Artigue, which she failed to complete in a timely fashion.

2

At the conclusion of the trial, the court reviewed the evidence and statements of witnesses before taking into consideration the requirements of La.Civ.Code art. 134, which provides a non-exclusive list of twelve factors to determine the child's best interest. The trial court specifically reviewed each of the enumerated factors before rendering judgment, awarding joint custody of the child to both parties and designating Artigue as the domiciliary parent. This appeal followed with Ganson specifically objecting to that part of the judgment granting Artigue domiciliary status.

## ASSIGNMENTS OF ERROR

On appeal, Ganson argues the trial court committed manifest error by (1) finding that the best interest of the child would be served by living with her father in Ardmore, Oklahoma, and (2) failing to take into consideration all of the twelve factors outlined by La.Civ.Code art. 134.

## OPINION

The standard of review in child custody cases has been clearly stated by this court:

> The trial court is in a better position to evaluate the best interest of the child from its observances of the parties and witnesses; thus, a trial court's determination in a child custody case is entitled to great weight on appeal and will not be disturbed unless there is a clear abuse of discretion. *Hawthorne v. Hawthorne*, 96–89 (La.App. 3 Cir. 5/22/96), 676 So.2d 619, 625, *writ denied*, 96–1650 (La.10/25/96), 681 So.2d 365.

*Gremillion v. Gremillion*, 07-492, p. 4 (La.App. 3 Cir. 10/3/07), 966 So.2d 1228, 1232. The procedure to be followed by appellate courts in determining whether an abuse of discretion has occurred has been further laid out:

> This court has announced a two-part test for the reversal of a factfinder's determinations:

3

1) The appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court, and
2) the appellate court must further determine that the record establishes that the finding is clearly wrong (manifestly erroneous). *See Mart v. Hill*, 505 So.2d 1120, 1127 (La. 1987).

*Stobart v. State, through Dep't of Transp. & Dev.*, 617 So.2d 880, 882 (La.1993).

Ganson's primary complaint on appeal is that the trial court erred in granting domiciliary status to Artigue. Ganson contends that almost every one of the best interest factors contained in La.Civ.Code art. 134 favor her as being the domiciliary parent and that the trial court improperly weighed the evidence and testimony presented at trial. In support of her argument, Ganson points to the family members still residing in Louisiana, Artigue's extensive work schedule, Artigue's more crowded home space, and Ganson's contention that she has been primarily responsible for the child since she was born. We note that "[t]he primary consideration in our analysis of a child custody determination is always the best interest of the child. La.Civ.Code art. 131." *Moss v. Goodger*, 12-783, p. 6 (La.App. 3 Cir. 12/12/12), 104 So.3d 807, 811. "The best interest of the child standard is a fact-intensive inquiry that requires the weighing and balancing of factors favoring or opposing custody in the competing parties on the basis of the evidence presented." *C.M.J. v. L.M.C.*, 14-1119, p. 24 (La. 10/15/14), 156 So.3d 16, 33. Even if it would have weighed the evidence differently, an appellate court cannot set aside the trial court's factual findings unless they are manifestly erroneous or clearly wrong. *Stewart v. Stewart*, 11-1334 (La.App. 3 Cir. 3/7/12), 86 So.3d 148. Louisiana Civil Code Article 134 provides a non-exclusive list of criteria to be considered by the trial court in determining the best interest of a child, stating:

4

The court shall consider all relevant factors in determining the best interest of the child. Such factors may include:

(1) The love, affection, and other emotional ties between each party and the child.

(2) The capacity and disposition of each party to give the child love, affection, and spiritual guidance and to continue the education and rearing of the child.

(3) The capacity and disposition of each party to provide the child with food, clothing, medical care, and other material needs.

(4) The length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment.

(5) The permanence, as a family unit, of the existing or proposed custodial home or homes.

(6) The moral fitness of each party, insofar as it affects the welfare of the child.

(7) The mental and physical health of each party.

(8) The home, school, and community history of the child.

(9) The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference.

(10) The willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party.

(11) The distance between the respective residences of the parties.

(12) The responsibility for the care and rearing of the child previously exercised by each party.

In its oral reasons for judgment, the trial court specifically addressed each of these twelve statutory factors, though it is not required to do so. *Stewart*, 86 So.3d 148. Nor is it bound to give more weight to one factor over another; the relative weight of each factor is left to the discretion of the trial court. *Harvey v. Harvey*,

5

13-81 (La.App. 3 Cir. 6/5/13), 133 So.3d 1, *writ denied*, 13-1600 (La. 7/22/13), 119 So.3d 596.

Our review of the record shows that the trial court issued lengthy and well supported oral findings of fact in making its custody determination. Therein, the trial court noted that while the child had maternal great-grandparents in Louisiana who had been a large and loving part of her life, the trial court was not able to award custody to another who is not a parent absent a showing of substantial harm. Such a showing was not made in this case, and the trial court refused to find that merely moving the child to Oklahoma to be with her father and his family amounted to substantial harm to the child. The trial court then addressed the Article 134 factors and found, based upon the evidence presented, that several of the factors weighed in favor of the father. The trial court found the parties to be equal in terms of love and affection with the child and that the first two factors did not favor either party.

The trial court then found that Artigue predominated as to the remaining factors based upon his employment and work ethic and the permanence of his household, citing his supportive wife and family. The court did note Artigue's absence from the child's early life but pointed to his continued efforts to establish a relationship with the child long before the current dispute. With regard to Ganson, the trial court expressed doubts about her ability to provide for and support the child, the stability of the environment she offers, her mental and physical health, her moral fitness as domiciliary parent, and her recorded history of thwarting Artigue's attempts to establish and maintain a close and continuing relationship with the child. The trial court found that Ganson was unemployed and suffering from some health issues, including depression. The trial court noted that though

6

her needs were being taken care of by family while she was not working, the Civil Code requires that each of the parties themselves be able to provide for the child to meet this factor. The court also questioned why Ganson failed to timely submit to the court-ordered drug screening, as well as noting that Ganson had already given up two children previously. The trial court finally expressed its concerns both about the violent and serious nature of Ganson's past and pending criminal charges and about the stability offered in Ganson's home, where the child's nights were spent rotating between three different households and where she could potentially be kicked out of her school as she is not attending school in the correct school district.

The majority of Ganson's arguments revolve around the trial court's findings of fact or determinations concerning the weight of the evidence. Such determinations are clearly and solidly within the purview of the trial court and will not be disturbed by this court absent manifest error or an abuse of discretion, as is appropriate. *See Stewart*, 86 So.3d 148. Ganson contends that the trial court's determination with regard to almost every one of the Article 134 factors was erroneous. However, our review of the record reveals adequate support for the trial court's findings of fact. For example, although Ganson complains that the trial court erred in failing to consider the distance between the parties and placing the child so far from her family, the record shows that the court did consider the child's great-grandparents and half-siblings in Louisiana, and noted she also has siblings and extended family in Oklahoma. Also, though the court did not favor either party on the factor of distance, the trial court specifically considered the issue when ordering that "Ganson will receive substantial, significant visitation with the child because of the distances." Further, a trial court is not required to

make a mechanical evaluation of all of the Article 134 factors, and the relative weight of each factor is left to the discretion of that court. *Harvey*, 133 So.3d 1. Based upon our review of the record, and given the great deference afforded the decision of the trial court in child custody matters, we find no error in the trial court's award of domiciliary status to Artigue. *See Gill v. Bennett*, 11-886 (La.App. 3 Cir. 12/7/11) 82 So.3d 383. Accordingly, this judgment is affirmed.

## DECREE

Pursuant to the foregoing, the judgment assigning joint custody, designating Artigue as domiciliary parent and setting visitation rights in favor of Ganson, is affirmed. Costs of this appeal are assessed to Kari Danielle Ganson.

**AFFIRMED.**

8